Case No. 24-14039

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

IN RE: CHIQUITA BRANDS INTERNATONAL, INC.,
ALIEN TORT STATUTE LITIGATION

_____

On Appeal from the United States District Court
For the Southern District of Florida
No. 08-md-01916
(No. 08-80465)
(The Honorable Kenneth A. Marra)

_____

APPELLANTS OPENING BRIEF

_____

Paul Wolf
P.O. Box 60584
Colorado Springs, CO 80960
Telephone (202) 431-6986
Fax: n/a
paulwolf@yahoo.com
*Attorney for Plaintiff-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

Counsel certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations (noted with its stock symbol if publicly listed) that have an interest in the outcome of the particular case on appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, and other identifiable legal entities related to a party, known to Appellants, are as follows:

Alcaraz Barrera, Maria Nohemi

Alvarez, Blanca Nubia

Armijo Copete, Margarita

Asprilla Valois, Heladio

Basto de Mena, Maria Raquel

Bautista Echevarria, Juana

Becerra, Lucina

Bejarano Cordoba, Sixta

Bello Marimon, Marciana

Betancur Aguirre, Maria Rosalva

Beyta Palacios, Eleida

Blandon Manco, Maria Olga

Blank Rome LLP

Borja Quintero, Gloria de Jesus

Bravo Silgado, Liliana

Burgos Jaramillo, Aracelly Irene

Cano Salazar, Ana Doris

Cardona Garcia, Otoriel

Cardona Villa, Consuelo

Cardona Villegas, Julieta

Carvajal Ramos, Enerida

Castano, Luz Dione

Chiqquita Brands International

Cifuentes Ruiz, Blanca Rosa

Cioffi, Michael, Esq.

Collingsworth, Terrence, Esq.

Conrad & Scherer LLP

Cordoba Medina, Marley de Jesus

Cordoba Tabares, Maria Norelis

Correa Gordon, Selinda

Correa Munoz, Gladys Nohemy

Cortes, Victoria

Covington & Burling LLP

Cuesta Palacios, Ana Josefa

Cuesta Palacios, Luz Amparo

Dante, Frank, Esq.

David Cardona, Luz Marina

David de Guisao, Adelina

David Higuita, Emirian de Jesus

Diaz Cardenas, Luciana

Durango David, Luz Marleney

Espitia Florez, Pedro Pascual

Fernandes Lagares, Marciris

Flores de Restrepo, Matilda

Flores de Sanchez, Gilma

Flores Garay, Omar

Flores Serna, Marta Rosa

Friedheim, Cyrus

Galindo Barrios, Mirleydis Judith

Garavito Hernandez, Maritza del Carmen

Garces Vasquez, Juana

Garcia Benitez, Jose de los Santos

Garcia de Arieta, Luz Elena

Garcia Santa, Miriam de Jesus

Garro Rodriguez, Marleny

Giraldo Marenco, Jesus Rafael

Gomez de Aguirre, Rosa Margarita

Gomez Duran, Dolly Amparo

Gomez Molina, Angela

Gonzalez Hernandez, Lisbania Angelica

Gonzalez Perez, Ana Isabel

Gopal, Serena, Esq.

Graciano Tuberquia, Maria Franquelina

Grandet Renal, Luz Marina

Guaca Murcia, Maruja

Gutierrez de Osorio, Lucelly

Hager, Eric, Esq.

Hart, Colin, Esq.

Hernandez Escobar, Maria Eloisa

Hernandez Velasquez, Lucelena

Hernandez, Diana Tirado

Higuita Goez, Francisco Luis

Higuita Torres, Maria Bracedes

Hinestroza Hurtado, Libia

Jaramillo Pulgarin, Alba Rosa

Jimenez Alvarez, Lubian Alonso

Julio, Maria Irene de la Rosa

Kistinger, Robert

Londono de Rengifo, Maria Rocio

Lopez Oviedo, Hercilia

Lopez, Barbara

Lopez, Gabriel George

Lopez, Maria

Lozano Rodriguez, Yamerlin

Machuca Blanquicett, Nurys

Machuca Pino, Rosa Mary

Marra, Kenneth A., The Honorable

Martinez Echevarria, Inez Janet

Martinez Mena, Benilda

Mestra Urango, Dina Luz

Minoya Mosquera, Ana Criselda

Molina Ruiz, Gloria Inez

Montoya Ramirez, Marina de Maria

Morelo Julio, Nilsa Eugenia

Moreno Charicha, Maria Silverio

Moreno Martinez, Maria de Jesus

Moreno Montoya, Lida

Moreno Rivas, Clara Veneranda

Moreno Rueda, Maria Dora

Moreno Torres, Maritza del Carmen

Mosquera Moreno, Edelmira

Mosquera Mosquera, Crecencia

Munoz Montoya, Luz Celi

Murillo Hidalgo, Ana Joselina

Murillo Murillo, Flor Alicia

Murphy, Melissa, Esq.

Ochoa Taborda, Aura

Olson, Robert

Ordman, John

Ortiz, Miriam de las Mercedes

Osorio Arias, Luz Dari

Paez Casarrubia, Eneida del Carmen

Panesso Prens, Orfelina

Perez Linan, Enelsy

Perez Padilla, Maria Encarnacion

Perez Uribe, Herminta

Perez Velez, Olga Libia

Polo Martinez, Nancy Edith

Porra Romana, Ana

Pozo Jimenez, Rosa Angelica

Quintero Hernandez, Luz Dari

Ramirez, Yomaira

Ramos Correa, Maria de la Cruz

Rangel Aguirre, Alcira Edith

Reinhart, Bruce E., The Honorable

Rengifo Mosquera, Jose Nilson

Renteria de Vasquez, Cruz Elena

Restrepo Rojas, Margarita de Jesus

Reyes Peres, Fanny

Rios Medrano, Oneida

Rivas Carvajal, Consuelo

Rivera Lopez, Dora Nelly

Rivera Villa, Tomas

Rojas, Nurisbel Maria

Romana, Maxima

Ruiz Mendoza, Zenith

Salas Blandon, Carmen Elisa

Salas Mayo, Merlin

Salcedo Naranjo, Everlides

Scherer, William, Esq.

Serna de Catano, Elvia Margarita

Silgado Becerra, Benigno

Soto, Maria de las Mercedes

Stewart, Thomas, Esq.

Suarez Giraldo, Ligia del Socorro

Tangarife de Gonzalez, Rosalba

Torres de Moreno, Josefa

Trujillo de Rojas, Maria Jovito

Tuberquia Graciano, Luz Elena

Tuberquia, Luz Elena

Usuga de David, Maria Jorgelina

Usuga Lopera, Mirta Lucia

Valenzuela, Olga Maria

Valoyes Manyoma, Rosa Alba

Vasquez Guerra, Miguel

Velasquez, Maria Eduvina

Waldo Cuesta, Maria Eugenia

Wolf, Paul, Esq.

Yepes Giraldo, Rosa Maria

Zuniga Berrio, Dalila Leonor

Zuniga Ibarguen, Rosa

I hereby certify that to the best of my knowledge, the above is a complete list of persons having an interest in this case.

/s/ Paul Wolf

_____
Paul Wolf, CO Bar 42107
*Attorney for Appellants*

December 14, 2024

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ………………………….    *i*

TABLE OF CITATIONS …………………………………………….…...    *x*

TABLE OF CITATIONS …......…………………………………………..    *xii*

JURISDICTIONAL STATEMENT ………………………………………    1

STATEMENT REGARDING ORAL ARGUMENT ……………………..    1

STATEMENT OF THE ISSUES UNDER REVIEW ……………………    2

STATEMENT OF THE CASE ………………………………………..    2

STATEMENT OF FACTS ………………………………………………    4

STANDARD OF REVIEW …………………………………………...    8

SUMMARY OF ARGUMENT ………………………………………..    9

ARGUMENT …………………………………………………………    10

I.    C&S cannot recover in <u>quantum meruit</u>, which is an equitable
right to recovery for fees and services in a particular suit, because
there were no express or implied agreements between Does 1-144
and C&S. ..............................................………    10

    A.    There are no express agreements between C&S and
any of Does 1-144, because Collingsworth didn't
work for C&S when Wolf signed his agreements
with Does 1-144. …………..........……….……..    11

    B.    There are no implied agreements between C&S and
any of Does 1-144, because Attorney-client retainer
agreements are not assignable. ……..........…..……    12

    C.    There was no express or implied understanding
for payment of attorney's fees out of the recovery
in the Wolf Plaintiffs' Settlement because C&S
rejected Wolf's offer to participate in the

      settlement negotiations, and never communicated
      with Does 1-144. ....................................................…   16

II.    The District Court abused its discretion by not reviewing C&S's
      79 pages of billing records for reasonableness. ….....................….   16

      A.    The District Court abused its discretion by not holding an
              evidentiary hearing. .................................................................   19

      B.    The work done by C&S on other cases in the Multi
              District Litigation didn't didn't contribute to or produce
              the settlement funds that are subject to the lien. ....................   20

      C.    The work done by C&S on the cases of Does 1-144 was
              minimal, and didn't contribute to or produce the
              settlement funds that are subject to the lien. ........................   23

      D.    The District Court abused its discretion by basing its
              decision on the declaration of C&S's attorneys fees expert,
              who had no personal knowledge of the nature of the work
              done. …………………............................................…………..   25

      E.    The District Court should have addressed the merits of
              the fee dispute rather than entering a default based on a
              procedural defect. ………........................................................   26

III.   C&S isn't entitled to the equitable remedy of _quantum meruit_
      recovery because they have unclean hands. .................................   27

CONCLUSION …………………………………………………..……...   30

# TABLE OF CITATIONS

## CASES

ACLU v. Barnes, 168 F.3d 423 (11th Cir. 1999) ……………………    10

Atlanta Journal Constitution v. City of Atlanta Dep't of Aviation,
442 F.3d 1283 (11th Cir. 2006) ……………………………………..  8-9, 27

Alyea v. Hampton, 112 Fla. 61 So. 242 (1933) ………………..........    11

Babineau v. Fed. Express Corp., 576 F.3d 1183 (11th Cir. 2009) ..........    20

Billingham v. Thiele, 107 So.2d 238 (Fla. 2d DCA 1958),
cert. dismissed, 109 So.2d 763 (Fla. 1959) ……………………….……...    11

Cardona v. Chiquita Brands Int'l, 760 F.3d 1185 (11th Cir. 2014) ……    3

Carrizosa v. Chiquita Brands Int'l, Inc., 47 F.4th 1278 (11th Cir. 2022)   3, 21

Club Madonna, Inc. v. City of Miami Beach, No. 13-cv-23762,
2015 WL 5559894 (S.D. Fla. Sept. 9, 2015) …………………………..  17-18

Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949) ……...    1

Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,
591 F.3d 1337 (11th Cir. 2009) ...............................................................    26

Conroy v. Conroy, 392 So.2d 934 (Fla.2d DCA 1980),
petition denied, 399 So.2d 1141 (Fla. 1981). ……………….………….    12

Correa v. Christensen, 780 So.2d 220 (Fla. 5th DCA 2001) …..……...    20

Daniel Mones, P.A. v. Smith, 486 So.2d 559 (Fla. 1986) ……..………    11

Dillard v. City of Greensboro, 213 F.3d 1347 (11th Cir. 2000) ……….  10-11

Drummond Co. v. Conrad & Scherer, LLP,
885 F.3d 1324 (11th Cir. 2018) ........................................  5, 8, 25, 28, 29, 30

Flagship Marine Servs., Inc. v. Belcher Towing Co.,
966 F.2d 602 (11th Cir. 1992) …………………………………………...    9

Godoy v. New River Pizza, Inc., 565 F. Supp.2d 1345 (S.D. Fla. 2008)    17

Gottlieb v. GC Fin. Corp., 97 F. Supp.2d 1310 (S.D. Fla. 1999) ……....    8

Greenfield Villages, Inc. v. Thompson,
44 So.2d 679 (Fla. 1950) ...........................................................  11-12, 14-15

Hogben v. Wyndham Int.'l, Inc., No. 05-20944-Civ, 2007 WL
2225970 (S.D. Fla. Aug. 1, 2007) …………………......……………….    21

Horton v. Reliance Standard Life Ins. Co.,
141 F.3d 1038 (11th Cir. 1998) ………………………………………    9

In Re: First Colonial Corp., 544 F.2d 1291 (5th Cir.),
cert. denied, 431 U.S. 904 (1977) …………………….…………….. .    19

Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240 (1933) ……    27

King v. McCord, 621 F.2d 205 (5th Cir. 1980) ………………………...    19

Kiobel v. Royal Dutch Petroleum Co., 569 U.S. 108 (2013) …………...    3

Klay v. United Healthgroup, Inc.,
376 F.3d 1092 (11th Cir. 2004) ………………………………………....    9

Latina v. Urquidi, Case No. 16-cv-22225, 2018 WL 1876736
(S.D. Fla. Mar. 7, 2018) ………………………………………………    17-18

Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co.,
2020 U.S. Dist. LEXIS 184770 (S.D. Fla. Sep. 18, 2020) ………....    18-19

Loranger v. Stierheim, 10 F.3d 776 (11th Cir. 1994) ………………….    17

Marable v. Walker, 704 F.2d 1219 (11th Cir. 1983) ……………………    19

Miller v. Scobie, 152 Fla. 328 (1943) ……..………......................…….    12

Montpellier Farm, Ltd v. Crane Environmental, Inc.,
Case No. 07-22815-CIV (S.D. Fla. Mar. 18, 2009) ……………........    21-23

Moton v. Nathan & Nathan, P.C.,
297 F. App'x 930 (11th Cir. 2008) ..........................................………    16-17

Naftzger v. Elam, 41 So.3d 944 (Fla.2d DCA 2010) …….…………    11

Norman v. Housing Auth. of Montgomery,
836 F.2d 1292 (11th Cir. 1988) ……………….…………………...    17

Organizacion Miss Am. Latina v. Urquidi, Case No. 16-cv-22225,
2018 WL 1876736 (S.D. Fla. Mar. 7, 2018) …………........….……    17-18

Peer v. Lewis, 606 F.3d 1306 (11th Cir. 2010) ………………………    9, 16

Perez v. Wells Fargo, N.A., 774 F.3d 1329 (11th Cir. 2014) ...................    26

Ross v. Bernhard, 396 U.S. 531 (1970) ……………………….………..    19

Scott v. Kirtley, 113 Fla. 637 (1933) .....................................................    12, 15

Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz,
652 So. 2d 366 (Fla. 1995) .....................................................………    20-21

Sherrard v. Macy's Sys. & Tech. Inc.,
724 Fed. Appx. 736 (11th Cir. 2018) .....................................................    27

Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A.
v. Baucom, 428 So.2d 1383 (Fla. 1983) …………..………….......    11, 14-15

Stitt & Co. v. Powell, 94 Fla. 550 (Fla. 1927) .........................................    14

Surtain v. Hamlin Terrace Found., 789 F.3d 1239 (11th Cir. 2015) ........    26

Taverna Imps. v. A&M Wine & Spirits, 2019 U.S. Dist. LEXIS
238644 (S.D. Fla. Oct. 2, 2019) …………………………………......…    19

U.S. v. Chiquita Brands, Case #07-cr-055 (RCL) ……………………..    2

United States v. Howell, 425 F.3d 971 (11th Cir. 2005) ………………    27

Whatley v. CNA Ins. Co., 189 F.3d 1310 (11th Cir. 1999) ……………    9

W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.,
728 So. 2d 297 (Fla. Dist. Ct. App. 1999)). ...........................................    20

**STATUTES**

28 USC § 1332 …………………………………………………….    1

28 USC § 1350 …………………………………………………….    2

28 USC § 1367 …………………………………………………….    1

**RULES**

Florida Rule of Professional Conduct 4-1.15(f)(2) ………………    10, 12-13

Local Rule 7.3 …………………………………………......……    17-18, 26

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over the case between Does 1-144 and Chiquita Brands International, Inc. pursuant to 28 USC § 1332. Likewise, there is diversity of citizenship between Wolf and Conrad & Scherer LLP. (hereinafter "C&S") Wolf is a citizen and residcnt of Colorado. C&S is located in Florida. The amount of attorneys fees in dispute is more than $75,000. The District Court also has supplemental jurisdiction pursuant to 28 USC § 1367.

This Court has jurisdiction over the appeal because the order on appeal is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it. <u>Cohen v. Beneficial Industrial Loan Corp.</u>, 337 U.S. 541, 546-547 (1949) It "fall[s] in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." <u>Id</u>. The Order on appeal was entered on December 2, 2024. Appellants timely filed their Notice of Appeal on December 8, 2024.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellants don't believe that oral argument is needed. Undersigned counsel is in Colombia distributing the settlement fund. Counsel for the Appellees lives in Ecuador. Nevertheless, undersigned counsel can travel to the United States if the Court wants to hear arguments.

1

## STATEMENT OF THE ISSUES UNDER REVIEW

1.      Whether the District Court erred by awarding attorneys fees in <u>quantum meruit</u> where no express or implied agreements or understandings exist, or have ever existed, between Does 1-144 and C&S.

2.      Whether the District Court abused its discretion by not reviewing the fees claimed by C&S for reasonableness, or conducting an evidentiary hearing as requested by C&S.

3.      Whether the District Court erred by awarding equitable relief where the Appellees have unclean hands, after having bribed the key witnesses in the first bellwether trial.

## STATEMENT OF THE CASE

The MDL arises from a criminal prosecution in the U.S. District Court for the District of Columbia, in <u>U.S. v. Chiquita Brands</u>, Case #07-cr-055 (RCL).  Chiquita pled guilty to engaging in financial transactions with a specially-designated terrorist group, the *Autodefensas Unidas de Colombia* (United Self-Defense Forces of Colombia or AUC).   The Multi District Proceedings began in June of 2007, when undersigned counsel filed the first complaint for 144 plaintiffs in the U.S. District Court for the District of Columbia, alleging negligence, wrongful death, and violations of the Alien Tort Statute and Torture Victim Protection Act.  28 USC § 1350; Appx. at 670.

After the District Court ordered Wolf and Collingsworth to brief who should be "lead counsel" for Does 1-144, Wolf and Collingsworth stipulated that Collingsworth would take on this role. Appx. at 777. On April 28, 2020, the District Court disqualified Collingsworth and C&S from representing Does 1-144, after a hearing in which Collingsworth conceded that he had never communicated with any of them. Appx. at 779. The disqualification motion arose from Collingsworth's motion to sever several plaintiffs from the bellwether pool.

On July 24, 2014, this Court affirmed the dismissal of claims brought pursuant to the Alien Tort Claims Act, after the U.S. Supreme Court ruled in <u>Kiobel v. Royal Dutch Petroleum Co</u>., 569 U.S. 108 (2013), in Appeal No. 12-14898. <u>Cardona v. Chiquita Brands Int'l</u>, 760 F.3d 1185 (11th Cir. 2014) Then on September 6, 2022, this Court affirmed the denial in part of Defendant Chiquita Brands' Motion for Summary Judgment, in Appeal No. 19-13926. <u>Carrizosa v. Chiquita Brands Int'l, Inc</u>., 47 F.4th 1278 (11th Cir. 2022) A six-week bellwether trial was held in April and May of 2024. On June 28, 2024 the Plaintiffs represented by undersigned counsel settled their 2,555 cases with Chiquita for $12.8 million dollars. Appx. at 855-861. The District Court entered judgment for the first trial on October 18, 2024. [DE 3906] This is currently on appeal in Case No. 24-13770.

On September 9, 2020, C&S filed a Notice of Charging Lien. Appx. at 785. On August 27, 2024, C&S filed a Motion to Enforce the Charging Lien and Set an

3

Evidentiary Hearing.  [DE 3884]  The Motion was referred to the Magistrate Judge whose Report and Recommendation ("R&R") was issued on October 15. 2024.  Appx. at 1028.  The R&R awarded C&S $225,000 in attorneys' fees and $4,755.42 in non-taxable expenses.  Appx. at 1044.  The District Court affirmed the R&R on December 2, 2024.  Appx. at 1045.  This is the Order on appeal.  No evidentiary hearing was ever held.

## STATEMENT OF FACTS

For at least 7 years, the Defendant Chiquita Brands made monthly protection payments to the *Autodefensas Unidas de Colombia* (the United Self Defense Forces of Colombia, hereinafter "AUC").  Appx. at 710-712.  After the AUC was designated by the U.S. State Department as a terrorist group, the Defendant notified the Department of Justice of the payments.  A criminal investigation ensued, resulting in a guilty plea in March of 2007. In May and June of 2007, undersigned counsel traveled to Colombia, returning with agreements with 144 legal heirs to 173 murders committed by the AUC, and other terrorist groups, and filed the first complaint in the MDL. Appx. at 670.  Before leaving, undersigned counsel met with Attorney Terrence Collingsworth, who did business as International Rights Advocates.  Wolf and Collingsworth agreed to work together on these cases as co-counsel.

Wolf met with each of Does 1-144 on this trip and signed retainer agreements with them in May-June of 2007.  See Declaration of Paul Wolf, Appx. at 1024 ¶ 4;

4

May 8, 2007 Retainer Agreement with Gladys Nohemy Corea Munoz, which is translated into English in the Appendix.  Appx. at 865-866.  Collingsworth did not meet with any of Does 1-144 or sign agreements with them.  Id.

This was a year before Collingsworth joined C&S.  See June 14, 2024 Declaration of William R. Scherer, Jr. in Drummond v. Collingsworth, 11-cv-3695 (NDAL), Appx. at 1013.  "C&S hired Terrence Collingsworth in early 2008." Id. at ¶10. "When Collingsworth joined Conrad & Scherer in 2008, C&S opened an office in Washington, D.C., for Collingsworth and the team he was bringing over from his non-profit law firm, International Rights Advocates." Id. at ¶11. By Mr. Scherer's own admission, Collingsworth didn't work for C&S at the time the agreements with Does 1-144 were signed. The retainer agreements, signed by Wolf and by the plaintiffs, listed Wolf, Collingsworth, and Bob Childs as counsel.  Appx. at 865. Wolf had never even heard of C&S at the time Appx. at 1024 ¶ 4.

After Collingsworth joined the firm of C&S in the Spring of 2008,  Wolf wrote Collingsworth a breach letter.  Appx. at 1020-2021.  Wolf and Collingsworth never worked together after that time.  After Wolf exposed the RICO conspiracy in 2011, C&S and the other Plaintiffs' counsel unanimously agreed to exclude Wolf from all further communications, and never worked with him again.  See Declaration of MDL Liaison Counsel Jack Scarola.  Appx. at 814.

5

Before Collingsworth joined C&S, C&S had filed their own case against Chiquita Brands, representing different plaintiffs.  See Carrizosa, et. al. v. Chiquita Brands Int'l, Case No. 07-60821, filed on June 13, 2007.  C&S were competing with Wolf and Collingsworth for clients until Collingsworth joined C&S.   When Collingsworth joined C&S in early 2008, Wolf wrote him a Breach Letter, ending their relationship. See Breach Letter of April 15, 2008.  Appx. at 1020-1021.  The Breach Letter alleged that:

> Dear Terry:
>
> Your acceptance of a position as a senior partner at Conrad & Scherrer [sic], LLP breaches our agreement, which we reduced to writing on September 14, 2007, to work as equal partners on all Colombian fruit cases for the next ten years. This agreement doesn't transfer to Conrad & Scherrer.
>
> Conrad & Scherrer has been competing with us since we filed the Chiquita case last June, and I understand that Conrad & Scherrer intends to continue its own case and add new plaintiffs to it.  As a partner in this firm, you are directly competing with me in that case. This is particularly true in Uraba where there are several lawyers running around claiming to be working with me who are not. The independent Conrad & Scherrer case will confuse the situation even more. ...

Appx. at 1020.  Wolf and Collingsworth attempted to resolve the dispute by agreeing to work together on the cases of Does 1-144, and on September 15, 2008 filed a stipulation that Collingsworth would be lead counsel for those cases.  Appx. at 777.  For the next decade, Wolf continued communicating with Does 1-144, maintaining offices in Apartado Colombia for three different periods of time, lasting about 1-2 years each.  Neither Collingsworth nor C&S ever communicated with Does 1-144

6

during that time.  Neither Collingsworth nor C&S ever signed retainer agreements

with any of Does 1-144. After a dispute over Collingsworth's severence of plaintiffs

from the bellwether poolWolf moved the District Court to disqualify him, and C&S,

from representing Does 1-144, which was granted on April 20, 2020. Appx. at 779.

    At about the same time, Wolf learned that C&S had contacted two of Does 1-

144 who had been selected as bellwether plaintiffs, named Rosamari Mechuca Pino

and Gladys Nomery Munoz Correa to defend their depositions.  Appx. at 1024 ¶5.

Wolf never agreed that C&S could defend their depositions without his presence. Id.

No one ever benefited from this unauthorized work done by C&S. Id. Because these

cases were dismissed in summary judgment, Wolf excluded both plaintiffs from the

Settlement Agreement.  Appx. at 1024-1025.

    The first bellwether trial played no role in amount of the Settlement, which

was agreed with a handshake long before the trial ended. Appx. at 1025 ¶7.  The

settlement discussions began on April 23, 2024, at the very beginning of the first

bellwether trial, and continued throughout the trial. Id.  C&S was asked to participate

in the Settlement in an April 23, 2024 email. Id.  C&S never responded to the offer,

but want to be awarded attorneys fees in quantum meruit from the Settlement. Id.

    At the Pre Trial Conference on March 25, 2024, Wolf told the District Court

about the witness bribery conspiracy, and filed several exhibits to prove it. Appx. at

836-843.  C&S bribed at least two witnesses in this case.  Id.  These witnesses

7

claimed to have murdered all of the bellwether plaintiffs in the first trial, having been paid by the Defendant Chiquita Brands.    Appx. at 788-809.    Moreover, Collingsworth, in his role as a partner at C&S, borrowed $1.5 million dollars from the van Bilderbeek brothers, one of whom is a convicted money launderer for the AUC. Appx. at 841, 1026 ¶9. Some of this money was recycled back to pay imprisoned AUC members to provide false testimony in litigation against the Drummond company.  Albert van Bilderbeek paid hundreds of thousands of dollars to imprisoned AUC members while Collingsworth was a senior partner at C&S and obtained the loan. Id. Hendrick van Bilderbeek was sentenced to 20 years in Colombia for laundering money for the AUC. Id. The van Bilderbeeks' shell company, Llanos Oil, was a client of Collingsworth at the time, using the attorney-client privilege to protect this part of the RICO conspiracy. Id. Neither Collingsworth nor C&S have ever representing the van Bilderbeeks or Llanos Oil in any court proceeding. Id.

## STANDARD OF REVIEW

Florida law governs in the instant matter. "Federal courts, although they recognize no common-law lien in favor of attorneys, give effect to the laws of the states in which they are held." Gottlieb v. GC Fin. Corp., 97 F. Supp. 2d 1310, 1311 (S.D. Fla. 1999). The Court "review[s] the district court's award of attorneys' fees and costs for abuse of discretion, revisiting questions of law de novo and reviewing

subsidiary findings of fact for clear error." <u>Atlanta Journal Constitution v. City of Atlanta Dep't of Aviation</u>, 442 F.3d 1283, 1287 (11th Cir. 2006)  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or bases the decision upon findings of fact that are clearly erroneous."  <u>Peer v. Lewis</u>, 606 F.3d 1306, 1311 (11th Cir. 2010) (quotation marks omitted)  "A district court may also abuse its discretion by applying the law in an unreasonable or incorrect manner." <u>Klay v. United Healthgroup, Inc</u>., 376 F.3d 1092, 1096 (11th Cir. 2004) Conclusions of law are reviewed <u>de novo</u>. <u>Horton v. Reliance Standard Life Ins. Co</u>., 141 F.3d 1038, 1040 (11th Cir. 1998). Under this standard, the court gives no deference to the lower court's decision and applies the same standard as the district court.  <u>Whatley v. CNA Ins. Co.</u>, 189 F.3d 1310, 1313 (11th Cir. 1999).   The court also reviews questions involving the application of law to particular facts <u>de novo</u>.  <u>Flagship Marine Servs., Inc. v. Belcher Towing Co</u>., 966 F.2d 602, 604 (11th Cir. 1992).

## SUMMARY OF ARGUMENT

C&S cannot recover attorneys fees in <u>quantum meruit</u> because C&S does not have written agreements with any of Does 1-144, or any understandings with them that C&S would recover attorneys fees from their cases.  This common law requirement for a charging lien is reviewed <u>de novo</u>.  Nor could any implied agreements exist.  Attorney-client retainer agreements are not assignable.  The

9

contracts between Wolf and Does 1-144 don't contain an assignment clause. Such a clause would violate the Florida Rules of Professional Conduct. This issue is also reviewed <u>de novo</u>.

The District Court abused its discretion by not reviewing C&S's 79 pages of billing records for reasonableness, not holding an evidentiary hearing, and relying on the declaration of an "attorneys fees expert" with no personal knowledge of how the work done related to Does 1-144's cases. Finally, the District Court abused its discretion by allowing C&S to bribe key witnesses in the case, and excluding the evidence of the bribery from the first bellwether trial.

## ARGUMENT

I.   **C&S LLP cannot recover in <u>quantum meruit</u>, which is an equitable right to recovery for fees and services in a particular suit, because there were no express or implied agreements between Does 1-144 and C&S.**

This Court reviews the district court's award of attorneys' fees and costs for abuse of discretion, revisiting questions of law <u>de novo</u> and reviewing subsidiary findings of fact for clear error. <u>Atlanta Journal Constitution v. City of Atlanta Dep't of Aviation</u>, 442 F.3d 1283, 1287 (11th Cir. 2006); <u>Dillard v. City of Greensboro</u>, 213 F.3d 1347, 1353 (11th Cir. 2000) (<u>citing</u> <u>ACLU v. Barnes</u>, 168 F.3d 423, 427, 436 (11th Cir. 1999) The requirements for a valid charging lien is a question of law reviewable under the **<u>de novo</u>** standard. "We review the district court's award for abuse of discretion, but this deferential standard of review does not prevent us from

revisiting questions of law <u>de novo</u>, or from reviewing subsidiary findings of fact for clear error." <u>Dillard</u>, 213 F.3d at 1353.  In <u>Dillard</u>, the Court reviewed <u>de novo</u> the legal requirements for awarding attorneys fees under two fee-shifting statutes. <u>Id</u>. at 1353-1357.  The instant case is similar, although the charging lien requirements arise from common law.

"The charging lien is an equitable right to have costs and fees due an attorney for services in suit secured to him in the judgment or recovery in that particular suit." <u>Naftzger v. Elam</u>, 41 So. 3d 944, 946 (Fla. 2d DCA 2010) (quoting <u>Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom</u>, 428 So. 2d 1383, 1384 (Fla. 1983). An attorney who seeks to enforce an attorney's fee charging lien is required to "show: (1) an express or implied contract between attorney and client; (2) an express or implied understanding for payment of attorney's fees out of the recovery; (3) either an avoidance of payment or a dispute as to the amount of fees; and (4) timely notice." <u>Id</u>. (quoting <u>Daniel Mones, P.A. v. Smith</u>, 486 So. 2d 559, 561 (Fla. 1986)).

**A.    There are no express agreements between C&S and any of Does 1-144, because Collingsworth didn't work for C&S when Wolf signed the retainer agreements with Does 1-144.**

In order for a charging lien to be imposed, there must first be a contract between the attorney and the client. <u>Billingham v. Thiele</u>, 107 So. 2d 238 (Fla. 2d DCA 1958), <u>cert. dismissed</u>, 109 So. 2d 763 (Fla. 1959).  The contract may be

11

express, <u>Alyea v. Hampton</u>, 112 Fla. 61, 150 So. 242 (1933), or implied, <u>Greenfield Villages</u>; <u>Scott v. Kirtley</u>, 113 Fla. 637, 152 So. 721 (1933). There must also be an understanding, express or implied, between the parties that the payment is either dependent upon recovery or that payment will come from the recovery. <u>Miller v. Scobie</u>, 152 Fla. 328, 11 So. 2d 892 (1943); <u>Conroy v. Conroy</u>, 392 So. 2d 934 (Fla. 2d DCA 1980), <u>petition denied</u>, 399 So. 2d 1141 (Fla. 1981). Without a retainer agreement signed by the client, C&S can't recover costs or fees for any work done in <u>quantum meruit</u>. No such agreement has ever existed. The agreements signed by Wolf and Does 1-144 don't refer to C&S. Appx. at 865-866.

### B. There are no implied agreements between C&S and any of Does 1-144, because Attorney-client retainer agreements are not assignable.

Wolf's agreements with Does 1-144 don't contain an assignment clause. Appx. at 865-866.  Such a clause would be invalid because it would violate the Florida Rules of Professional Conduct.  To obtain power of representation over these Plaintiffs' cases, C&S would have had to obtain the clients' informed consent, in writing, which they never did. The client must also be provided with a copy of this agreement.  Florida Rule of Professional Conduct 4-1.15(f)(2) states that

> Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding in which the lawyer's compensation is to be dependent or contingent in whole or in part on the successful prosecution or settlement must do so only where the fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer [sic] or for the

law firm representing the client. **No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm must sign the contract with the client** and must agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client must be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule will apply to such fee contracts.

Id. (emphasis added)  This defeats C&S's arguments about implied contingency agreements as a matter of law.

The contracts do refer to Terry Collingsworth, but he is not the one who filed the charging lien. Collingsworth stopped working for C&S in 2015.  See Scherer Declaration, Appx. at 1014 ¶15. ("C&S hired Collingsworth as a contract partner, not an equity partner, and he remained a contract partner until his separation from the firm in late 2015")  Collingsworth wasn't working for C&S in 2019, when C&S filed its charging lien. Id.  Collingsworth only worked for C&S for 7 years, and this doesn't coincide with the signing of the retainer agreements.

The retainer agreements state that the "Client agrees that Attorneys have the sole authority to hire additional attorneys to work with them to prosecute the claims detailed in paragraph number two, and have the sole authority to terminate any previously retained attorneys. **Any other arrangements with any other retained attorney or attorneys are between the Attorneys and those attorneys**." Appx. at 865 ¶ 3. (emphasis added)  This clause can't create attorney-client relationships with other, unnamed attorneys. Does 1-144 aren't parties to those other arrangements,

13

whatever they may be. Neither is Wolf, who isn't aware of the details of those arrangements either. Neither Wolf nor Collingsworth hired C&S. Collingsworth was hired by C&S. When Wolf learned of this, he didn't agree to hire C&S, but wrote a breach letter instead. Appx. at 1020-1021.

There is case law referring to "implied" attorney-client agreements, see Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So.2d 1383, 1385 (Fla. 1983), but they all involved existing, written agreements that were extended to include implied terms. There is no case law in this, or any other circuit finding implied agreements where no written agreement of any sort existed.

In Greenfield Villages, Inc. v. Thompson, 44 So. 2d 679 (Fla. 1950), an attorney was retained by the defendant in a real estate dispute. The parties verbally agreed that the defendant would pay the plaintiffs a reasonable attorney's fee from the money arising from the transacion. However, the amount of the fee for this work wasn't specified in the defendant's written agreement with his attorney. The court awarded a "reasonable" attorney fee. "We have held on many occasions, where a person employs an attorney to perform legal services and no expressed agreement was reached between the parties as to the amount of the attorney fee to be paid for the services rendered, the law under such circumstances implies a contract upon the part of the party employing the attorney to pay him reasonable compensation for such services." Id., citing Stitt & Co. v. Powell, 94 Fla. 550 (Fla. 1927). Greenfield

14

is distinguishable from the instant case because the client had hired the attorney, but their agreement didn't specify the amount of compensation. In the instant case, Does 1-144 never hired C&S to represent them. This is a different kind of "implied agreement" than when there is no relationship at all between the party and an attorney who did work that was never even contemplated by the client.

Similarly, in Scott v. Kirtley, 113 Fla. 637 (1933), an attorney was hired by a client to perform legal services whereby the attorney's fee would be paid from any recovery from the lawsuit. When the client refused to pay, the attorney placed a lien on the recovery for the reasonable value of his services, the amount of which wasn't specified in their written agreement. The court found the lien to be enforceable and determined the amount of the fee. Again, there was a written agreement between the attorney and the client.

The Greenfield and Scott cases are similar in that agreements existed between the attorney and the client, but the amount of the fee wasn't specified in the agreement. Thus, the two cases cited in Sinclair for implied agreements involved attorney client agreements that did exist, but were vague as to the amount. They do not support C&S' position that they have agreements with Does 1-144 because they hired Collingsworth, and his agreements were transferred to them. Since C&S have neither express nor implied agreements with any of Does 1-144, C&S cannot meet

the first requirement for a valid charging lien as set forth by the Florida Supreme Court.  <u>Sinclair</u> , 428 So. 2d at 1385.

> **C.    There was no express or implied understanding for payment of attorney's fees out of the recovery in the Wolf Plaintiffs' Settlement because C&S rejected Wolf's offer to participate in the settlement negotiations, never even communicated with Does 1-144.**

On March 13, 2019, Collingsworth filed a Motion to Sever the Claims of Doe 46, one of the Plaintiffs in the Does 1-144 complaint. [Doc. 2322] Undersigned counsel responded with a Cross Motion to Discharge Collingsworth and C&S from the representation of Does 1-144. [Doc. 2373, 2373-1][1] The Court granted the Cross Motion and disqualified Collingsworth and C&S.  Appx. at 779.

**II.    The District Court abused its discretion by not reviewing C&S's 79 pages of billing records for reasonableness.**

"A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or bases the decision upon findings of fact that are clearly erroneous." <u>Peer v. Lewis</u>, 606 F.3d 1306, 1311 (11th Cir. 2010) (quotation marks omitted)  "Although a district court has wide

---

[1] In the Cross Motion, we argued that (1) the stipulation entered into by Wolf and Collingsworth to work together to resolve the dispute in representation wasn't binding on the Court; (2) Does 1-144 had chosen Paul Wolf as their attorney, and are entitled to counsel of their choice; (3) if Collingsworth ever had power of representation, he abandoned Does 1-144 by never contacting them over the previous 12 years; (4) Collingsworth was terminated from C&S, and stopped working with Wolf over twelve years before; and (5) that Collingsworth and C&S have bribed key witnesses in this case and others. <u>Id</u>.

discretion in performing these calculations, the court's order on attorney fees must allow meaningful review — the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." Moton v. Nathan & Nathan, P.C., 297 F. App'x 930, 932 (11th Cir. 2008); see Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994); Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1304 (11th Cir. 1988). Even where a party has failed to comply with Local Rule 7.3, the Court must independently assess the reasonableness of any claim for fees. Godoy v. New River Pizza, Inc., 565 F. Supp. 2d 1345, 1347 (S.D. Fla. 2008).

Cases in the District Court also support the view that the court had a duty to review C&S's time entries for reasonableness, even if Wolf didn't make any objections. See Organizacion Miss Am. Latina v. Urquidi, Case No. 16-cv-22225, 2018 WL 1876736, at *3 (S.D. Fla. Mar. 7, 2018); Club Madonna, Inc. v. City of Miami Beach, No. 13-cv-23762, 2015 WL 5559894 (S.D. Fla. Sept. 9, 2015).

In Club Madonna, even though the Court found that the non-movant "flippantly disregard[ed] LR 7.3, the court nonetheless "carefully reviewed" the attorney invoices submitted, id. at *5, and "note[d] that the flaws that Ramirez raises (i.e., that certain fees are for excessive, duplicative or unrelated work) are apparent from the time entries and, thus, the Court would have addressed them even if Ramirez had not objected." Club Madonna at *5. "The Court can award only

17

reasonable attorney's fees and it is therefore obligated to determine the reasonableness of a fee request. I have thus reviewed Plaintiff's fee request in detail." Id. at 6. The Court did so even though the non-movant didn't comply with LR 7.3 and make particular challenges to the movant's fee request.

In Organización Miss Am. Latina v. Urquidi, a party failed to challenge the individual time entries as required by Local Rule 7.3, but only generally questioned the "procedural propriety and legal authority for the attorney's fees sought, and asserted that the fees were excessive." 2018 WL 1876736, at *4. The non-movant did not specify the challenged time entries because he "ha[d] not conducted a detailed review yet." Id. Quoting Club Madonna, the District Court in this case also "carefully reviewed" the attorney invoices submitted. Id. "This court also notes that the flaws that Ramirez raises (ie. that certain fees are for excessive, duplicative or unrelated work) are apparent from the time entries and, thus, the Court would address them even if Ramirez had not objected. The Court can award only reasonable attorneys fees and it is therefore obligated to determine the reasonableness of a fee request. I have thus reviewed Plaintiff's fee request in detail." Id. "I have thoroughly reviewed the time sheets that Plaintiff's counsel submitted and find that some entries reflect duplicative, excessive, or unrelated work. In totaling up reasonable hours billed, I have eliminated those entries, or as indicated below, have reduced them." Id. at 6. That did not happen here. The District Court neither reviewed C&S's

18

claimed fees for reasonableness, nor did it hold an evidentiary hearing.  cf. Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co., 2020 U.S. Dist. LEXIS 184770 (S.D. Fla. Sep. 18, 2020) (unpublished) (district court entered a default where party entirely failed to respond to motion for attorneys fees)

**A.    The District Court abused its discretion by not holding an evidentiary hearing.**

In King v. McCord, 621 F.2d 205 (5th Cir. 1980) (King v McCord I), the Fifth Circuit held that where an evidentiary hearing was requested, where there were disputes of fact, and where the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact, it was an abuse of discretion to make an award without holding an evidentiary hearing. This court followed that decision in Marable v. Walker, 704 F.2d 1219 (11th Cir. 1983) King v. McCord I relied on In Re: First Colonial Corp., 544 F.2d 1291 (5th Cir.), cert. denied, 431 U.S. 904, (1977), which relied on Ross v. Bernhard, 396 U.S. 531, 541 n. 15 (1970).

In Taverna Imps. v. A&M Wine & Spirits, 2019 U.S. Dist. LEXIS 238644 (S.D. Fla. Oct. 2, 2019) (unpublished), a litigant's reponse to a motion for fees didn't describe with particularity each line item claimed, provide legal authority, or challenge the movant's rates.  Id. at *3. Judge Goodman ordered the Parties to mediate.  Id.  After the mediation failed, the court granted the motion, and invited the movants to file an amended motion for fees and costs. The Court then found that the non-movants had waived their right challenge the fees, but nevertheless reduced

them by 50%. Id. at *4.  In the instant case, the District Court neither reviewed the billing records for reasonableness, held an evidentiary hearing, ordered the parties to confer, or ordered them to mediate the dispute.

**B.    The work done by C&S on other cases in the Multi District Litigation didn't contribute to or produce the settlement funds that are subject to the lien.**

"It is not enough to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services." Correa v. Christensen, 780 So. 2d 220, 220 (Fla. 5th DCA 2001)  To state a quantum meruit claim, the lawyer must prove that it "provided, and [the client] assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it." Babineau v. Fed. Express Corp., 576 F.3d 1183, 1194 (11th Cir. 2009) (quoting W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc., 728 So. 2d 297, 305 (Fla. Dist. Ct. App. 1999)).  "Unlike an award of attorney's fees to a prevailing party, a quantum meruit award must take into account the actual value of the services to the client." Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz, 652 So. 2d 366, 369 (Fla. 1995)  Among the non-exclusive factors the Court can consider are: "the fee agreement itself, the reason the attorney was discharged, actions taken by the

attorney or client before or after discharge, and the benefit actually conferred on the client." Id.  Under Florida charging lien principles, an attorney cannot recover on a charging lien in this case for work done in other cases. Hogben v. Wyndham Int.'l, Inc., No. 05-20944-Civ, 2007 WL 2225970, *5 (S.D. Fla. Aug. 1, 2007)

In Montpellier Farm, Ltd v. Crane Environmental, Inc., Case No. 07-22815-CIV- (S.D. Fla. Mar. 18, 2009) the court refused to enforce a charging lien because the claimants hadn't met their burden of showing that their legal services produced or contributed to the settlement of the case. "The claimants drafted a complaint, a version of this complaint was filed and later amended by counsel of record. The claimants also provided some legal advice to the plaintiff. The claimants did not participate in settlement negotiations with the defendant that resulted in the settlement of the instant action. The claimants did not strategize with or otherwise provide litigation support to counsel of record in their prosecution of the instant litigation." Id. at *11.

On June 13, 2007, C&S filed its own complaint against Chiquita Brands.  See Carrizosa, et. al. v. Chiquita Brands Int'l, case no. 07-60821. C&S were competing with Wolf and Collingsworth for clients until Collingsworth joined C&S.  The C&S complaint now includes more than 1,000 other plaintiffs, besides Does 1-144.  The work that C&S did throughout the MDL proceedings applied to these cases as well. The filings in court and deposition captions, which were normally made by other

21

counsel working with C&S, expressly stated that they did not apply to the "Wolf Plaintiffs."  Wolf had to file duplicative legal arguments since 2010, including in two appeals and a petition for <u>certiorari</u> to the U.S. Supreme Court.  None of the work done by C&S on these other cases was applicable to Does 1-144.

C&S have listed 610 time entries. Almost all of them relate to work done generally on the MDL, when Wolf and C&S were not working together or even communicating. On April 15, 2008, Wolf wrote Collingsworth a breach letter.  <u>See</u> Appx. at 1020-1021.  C&S started creating these billing records at the same time Wolf and Collingsworth stopped working together, which was when Collingsworth started working for C&S.  <u>Id.</u>  Only the first 6 out of 610 entries pre-date the breach letter, and they are billing records about a dispute over Collingsworth joining C&S and who should represent the first 144 plaintiffs.  These six entries provided no benefit to Does 1-144.  Moreover, the work C&S did on other cases in the MDL wasn't ever shared with Does 1-144 or their counsel, Paul Wolf, who had no knowledge of it until the bill of costs for the charging lien was filed.

No benefits were ever provided to any of Does 1-144, including work done during the first bellwether trial, which didn't include any of the Wolf Plaintiffs. The first bellwether trial played no role in amount of the Settlement, which was agreed with a handshake long before the trial ended.  <u>See</u> Exhibit 2, Wolf Declaration at ¶5. C&S was asked to participate in the Settlement, declined to do so, and now want a

part of it. As in <u>Montpellier Farm</u>, Wolf negotiated with the defendant Chiquita Brands without the claimants' assistance and obtained a settlement in favor of the plaintiffs. <u>Id</u>. Therefore, "[i]t cannot be said that the claimants' work contributed or produced the resulting settlement funds." <u>Id</u>.

### C.    The work done by C&S on the cases of Does 1-144 was minimal, and didn't contribute to or produce the settlement funds that are subject to the lien.

The only substantial work done on the cases of Does 1-144 was to defend the depositions of two bellwether plaintiffs from this complaint.  However, there was no judgment or recovery in either of them, so there is nothing to recover against. Both were dismissed in the second round of summary judgment, <u>see</u> Order [Doc. 3238] at 40-43 (Rosamari Mechuca Pino) and 51-53 (Gladys Nomery Munoz Correa); Wolf Declaration, Appx. 1024 at ¶ 5, and excluded from the Settlement.[2] <u>Id</u>. at ¶ 6.  Wolf argued the Opposition to the Defendants' Motion for Summary Judgment for these and other cases.

A search of C&S's billing records for the names of these two plaintiffs shows a total of 100.7 hours and $18,539. dollars for work done relating to them.  (Entries #168, 170, 175, 176, 211, 216, 218, 222, 228, 231, 235, 241, 252, 263, 265, 286, 324, 344, 357 and 365) Appx. at 903-928.  However, many of these entries also

---

[2] Wolf didn't even know that C&S deposed two of his clients until Collingsworth moved to sever the claims of Doe 46 on March 13, 1019.  Therefore, there was no express or implied understanding of any payment, either.  <u>See</u> § I(C) <u>supra</u>.

include depositions of multiple plaintiffs, and merely mention the names of one or both of these plaintiffs among others.[3] C&Sare billing at rates up to $550 per hour. None of Does 1-144 could ever have paid them at that rate.[4]

C&S have also claimed hours for paralegal David Gunion to review the files of, and call ten additional plaintiffs among Does 1-144. These include 11 entries described as "review of file" (#179, 180, 181, 182, 184, 185, 186, 188, 189, 195, and 197) for a total of 6.9 hours billed at $1207.50. They also include 5 entries described as phone calls or "follow up" (#183, 187, 190, 191 and 196) for 2 hours billed at $350. Appx. at 905-906. These are mixed in with many other entries for similar work done on the cases of other Plaintiffs of C&S who are not among Does 1-144. See, e.g. Entry 193 "Review file RE Uraba (Clara Bernarda M. Rivas)"; Appx. at 906, and many others.

---

[3] Some of C&S's billing records relate to work supposedly done on the case of Liliana Bravo. However, when Ms. Bravo was contacted by C&S, she immediately contacted undersigned counsel, and stated that she didn't want C&S to represent her, and this was communicated to Eric Hager of C&S. She was served with Chiquita's discovery requests, sent to Wolf, on about January 2, 2018. C&S claim to have spoken with her on the phone - see entry 524 of 9/27/2018 - and to have done other work on her case after that time. See Entry 540 of 10/29/2018, Entry 549 of 1/8/2019, Entry 550 of 1/15/2019. These three entries are for 3.1 hours billed at $617. Appx. at 949-953. C&S also claim to have paid $153 to Liliana Bravo in petty cash on 8/23/2017. Appx. at 962. However, she contacted Wolf immediately after C&S contacted her and never met with them.
[4] C&S's out of pocket expenses in defending the depositions, in the amount of $4,755.42 appears reasonable, and Wolf does not object to them.

Adding up all the work done that refers to plaintiffs Does 1-144 by name, C&S's records show a total of 112.7 hours billed at $20,713.50 and $153.00 in cash that they claim was paid to Liliana Bravo. None of this work was authorized or led to any benefit to anyone. The Settlement encompasses approximately 2,555 cases. Appx. at 865. If C&S's hourly rates were multiplied by the number of Wolf Plaintiffs that settled, would amount to over $200,000,000. in attorneys' fees, and exceed the 33% of the recovery specified in Does 1-144s' retainer agreements.

**D.    The District Court abused its discretion by basing its decision on the declaration of C&S's attorneys fees expert, who had no personal knowledge of the work done.**

C&S's attorney fees expert had no personal knowledge of anything other than records provided to her by C&S. Appx. at 869. ("I have reviewed ... the records maintained by Conrad & Scherer, LLP ("C&S") describing the services rendered by C&S...")  If Collingsworth or the other attorneys allegedly performign this had submitted declarations, the declarants would have been people with personal knowledge of the work that was done.    In <u>Drummond v. Collingsworth</u>, Collingsworth manipulated his attorney Brad Smith by providing him with privilege logs that had key documents removed, such that Smith was unwittingly helping to perpetrate a fraud on the court. <u>See</u>, <u>e.g.</u> Order of December 7, 2015 in <u>Drummond v. Collingsworth</u>, 11-cv-03695-RDP (NDAL) at *31. ("When questioned about these redactions which perpetuated the non-disclosure and alleged fraud on the court,

Collingsworth testified that he was involved only to the extent that he discussed redaction decisions with his counsel Brad Smith; he did not actually perform the redactions.")  Here, another attorney was used to introduce billing records for work that has nothing to do with the Does 1-144, and was never used in their cases.

### E.    The District Court should have addressed the merits of the fee dispute rather than entering a default based on a procedural defect.

The District Court should have ordered the parties to confer pursuant to the District Court's Local Rule 7.3, or held an evidentiary hearing, which was the relief requested by C&S in their "Motion to Enforce Charging Lien and Hold an Evidentiary Hearing."  [DE 3884] Given the Eleventh Circuit's "strong policy of determining cases on their merits … default judgments are generally disfavored." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244-45 (11th Cir. 2015) (citation omitted). "The court may set aside an entry of default for good cause..." Perez v. Wells Fargo, N.A., 774 F.3d 1329, 1338 (11th Cir. 2014). Courts should not find that good cause exists if a defaulting party "demonstrates an intentional or willful disregard of the judicial proceedings." Id. at 1337 n.7.  This did not occur here. Wolf explained below that he failed to read Local Rule 7.3 or understand the significance of failing to review C&S' hundreds of pages of billing records, none of which had any relevance to Does 1-144.  Remanding the fee dispute for an evidentary hearing will not prejudice C&S.  "[T]he inquiry is whether prejudice results from the delay, not from having to continue to litigate the case." Conn. State Dental Ass'n v. Anthem

26

Health Plans, Inc., 591 F.3d 1337, 1357 (11th Cir. 2009). Prejudice may exist if the delay resulted in a loss of evidence, "increased difficulties in discovery, or allowed for greater opportunities for fraud and collusion." See Sherrard v. Macy's Sys. & Tech. Inc., 724 Fed. Appx. 736, 739 (11th Cir. 2018). There is nothing in the record to suggest that any of this would occur. Undersigned counsel has learned his lesson and wants a hearing or mediation to review C&S' billing records.

## III.    C&S isn't entitled to the equitable remedy of quantum meruit recovery because they have unclean hands.

A litigant seeking equitable relief "must come into court with clean hands." Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 241, 244-46 (1933); United States v. Howell, 425 F.3d 971, 974 (11th Cir. 2005) ("The doctrine of 'unclean hands' is an equitable test that is used by courts in deciding equitable fate."). The Disrict Court's exclusion of evidence of the bribery of the key witnesses in the first bellwether trial was clearly erroneous. Atlanta Journal Constitution v. City of Atlanta Dep't of Aviation, 442 F.3d 1283, 1287 (11th Cir. 2006) C&S's bribery of two paramilitary witnesses in the case - Raul Emilio Hasbun Mendoza and Jose Gregorio Mangones Lugo - completely undermined the validity of the first bellwether trial. All of the cases in the first bellwether trial were supported by purported confessions of one or the other of these two bribed witnesses. Their expert, Professor Kaplan, relied on this tainted evidence in his report and referred to it in his testimony at trial. This "fruit of the poisoned tree" invalidated the first trial.

The district court excluded a vast amount of extrinsic evidence of the bribery, yet allowed the tainted evidence into the trial.  See Chiquita's Notice of Supplemental Authority.  Appx. at 788-809.  Undersigned counsel tried convince the district court to exclude the tainted witness evidence at the Pre Trial Conference for the first bellwether trial on March 25, 2024.  "MR. WOLF: ... I would ask the court, after this case is over, to please refer this case to the U.S. Attorney's Office."  Appx. at 989.  "Mr. Hasbun testified that he was offered between $3-5 million dollars to testify, depending on the outcome of the case. He had at first refused to testify, but after the offer, he changed his mind." Appx. at 990, see Appx. at 997.[5]  "So, you know, we

_____

[5] According to Collingsworth, the subject of hiring convicted terrorist Raul Hasbun as an expert witness was discussed, but Hasbun was never actually paid. "Some of you will recall that we discussed WHETHER there was a way we could retain Raul Hasbun as an expert or cover his attorneys fees related to his testimony as he had offered to tell all he knew about AUC finances.  As a group, we did not decide one way or the other ... I certainly did not act unilaterally; we have continued discussions with Hasbun, but have not and will not provide any funds for whatever reason unless and until we agree and have an ethical foundation for doing so.  I may need a few of the group to confirm this was the case." See Serious Paul Wolf Problem email of October 8, 2013 from Terrence Collingsworth to Rick Hertz and others, Appx. at 817.

  According to the Plaintiffs' Liaison Counsel Jack Scarola, "Without waiving any work product or common interest privilege, given the negative impression about Terrence Collingsworth that Mr. Wolf is attempting to portray, I can clarify that the context for the meeting was that Mr. Collingsworth told the group that in his Drummond litigation, several witnesses and their family members received death threats when they were about to testify about Drummond's participation in war crimes and extrajudicial killings.  Mr. Collingsworth was providing notice to the group that we could expect similar issues to arise when we finally get into discovery in our Chiquita litigation.  Mr. Collingsworth was not advocating a position one way or the other, but he did say that in the Drummond case he was forced to relocate

are trying to tell the jury about the defendants paying $1.7 million to this terrorist

organization. We are going to have a trial to decide whether they had a valid reason

or whether it was extortion. And now the defendants can say, but look what the

plaintiffs did. They borrowed a million and a half dollars from the same organization

-- I can prove that right now -- and there's no extortion, and there is a contingency

fee agreement up to $5 million."  Appx. at 829.

Shortly after Collingsworth was hired as a partner at C&S, he borrowed $1.5

million dollars from Albert and Hendrick van Bilderbeek, who are money launderers

for the AUC. Appx. at 1026.  See Declaration of William R. Scherer, Appx. at 1015.

"I was generally aware that, after Collingsworth joined the firm, C&S provided

security or relocation funding to some witnesses or their families in Colombia." Id.

at ¶ 33. "Collingsworth did not advise any firm partners, including myself, about his

---

family members of witnesses because of credible death threats they received, and
that we should be prepared to address this."  Declaration of Jack Scarola in
Drummond v. Collingsworth ("RICO").  Appx. at 813.  "In the midst of these
discussions about witness security, the lawyers for the Plaintiffs in the Chiquita
MDL decided by unanimous consent to exclude Mr. Wolf from further confidential
discussions.  This was because he had previously revealed the content of these
discussions in public filings, he refused to sign the confidentiality agreement we all
had signed, and he also declined to abide by other rules we agreed upon to operate
as a group. Thus, Mr. Wolf does not have personal knowlege of how or whether we
resolved any of the issues of witness security or any other strategic matters."  Appx.
at 814.  The Northern District of Alabama held that the crime-fraud exception to the
attorney work product doctrine applied. Drummond Co. v. Conrad & Scherer, LLP,
885 F.3d 1324 (11th Cir. 2018).  The Alabama Bar also upheld the disclosure of the
witness bribery allegations.

engagement with Albert van Bilderbeek *before* entering into that engagement." Appx. at 1016, ¶ 41. (emphasis added) "I did not know about Collingsworth's financial relationship with Bilderbeek." Id. at ¶ 44. Hendrick Van Bilderbeek was sentenced to 20 years in Colombia for laundering AUC drug trafficking proceeds before Collingsworth, in his role as a senior partner at C&S, borrowed the money from him. Appx. at 841-842. Moreover, the bribery of these two witnesses was part of a larger RICO conspiracy involving fraudulent claims against the Drummond Company and the Dole Food Company. See Order on Motion for Summary Judgment in Drummond v. Collingsworth and Conrad & Scherer, LLP ("RICO"), Case 11-cv-3695 (NDAL) Appx. at 1048-1080.

## Conclusion

For the foregoing reasons, the Court should REVERSE the Order on appeal. In the alternative, the Court should REMAND the case back to the District Court to determine the reasonableness of the claimed fees.

Respectfully submitted,

/s/Paul Wolf

_____

Paul Wolf, DC Bar #480285
*Attorney for Does 1-144*
P.O. Box 60584
Colorado Springs, CO 80960
(202) 431-6986
paulwolf@yahoo.com

January 7, 2025

30

## Certificate of Compliance
## with Type-Volume Limitation

I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 11th Cir. R. 32-4, and

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because it has been prepared using Microsoft Word in Times New Roman, 14-point font.

/s/ Paul Wolf
_____

Paul Wolf

## Certificate of Service

I hereby certify that on this 7th day of January, 2025, I served copies of this brief by DHL International Mail, c/o Inter Rapidissimo, as detailed below.

Four copies to:

Clerk of the Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth Street, N.W.
30303 Atlanta, Georgia
United States of America

I further certify that on the same day, I served an electronic copy of the same brief to counsel for the Appellees at the following email addresses:

Eric Hager - ehager@conradscherer.com
William R. Scherer - wscherer@conradscherer.com

/s/ Paul Wolf
_____

Paul Wolf