Case No. 24-14039

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

IN RE: CHIQUITA BRANDS INTERNATONAL, INC.,
ALIEN TORT STATUTE LITIGATION

_____

On Appeal from the United States District Court
For the Southern District of Florida
No. 08-md-01916
(No. 08-80465)
(The Honorable Roy K. Altman)

_____

APPELLANTS DOES 1-144 AND PAUL WOLF, ESQ.'S

REPLY

_____

Paul Wolf
P.O. Box 60584
Colorado Springs, CO 80960
Telephone (202) 431-6986
Fax: n/a
paulwolf@yahoo.com
*Attorney for Plaintiff-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

Counsel certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations (noted with its stock symbol if publicly listed) that have an interest in the outcome of the particular case on appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, and other identifiable legal entities related to a party, known to Appellants, are as follows:

Alcaraz Barrera, Maria Nohemi

Alvarez, Blanca Nubia

Armijo Copete, Margarita

Asprilla Valois, Heladio

Basto de Mena, Maria Raquel

Bautista Echevarria, Juana

Becerra, Lucina

Bejarano Cordoba, Sixta

Bello Marimon, Marciana

Betancur Aguirre, Maria Rosalva

Beyta Palacios, Eleida

Blandon Manco, Maria Olga

Blank Rome LLP

Borja Quintero, Gloria de Jesus

Bravo Silgado, Liliana

Burgos Jaramillo, Aracelly Irene

Cano Salazar, Ana Doris

Cardona Garcia, Otoriel

Cardona Villa, Consuelo

Cardona Villegas, Julieta

Carvajal Ramos, Enerida

Castano, Luz Dione

Chiqquita Brands International

Cifuentes Ruiz, Blanca Rosa

Cioffi, Michael, Esq.

Collingsworth, Terrence, Esq.

Conrad & Scherer LLP

Cordoba Medina, Marley de Jesus

Cordoba Tabares, Maria Norelis

Correa Gordon, Selinda

Correa Munoz, Gladys Nohemy

Cortes, Victoria

Covington & Burling LLP

Cuesta Palacios, Ana Josefa

Cuesta Palacios, Luz Amparo

Dante, Frank, Esq.

David Cardona, Luz Marina

David de Guisao, Adelina

David Higuita, Emirian de Jesus

Diaz Cardenas, Luciana

Durango David, Luz Marleney

Espitia Florez, Pedro Pascual

Fernandes Lagares, Marciris

Flores de Restrepo, Matilda

Flores de Sanchez, Gilma

Flores Garay, Omar

Flores Serna, Marta Rosa

Friedheim, Cyrus

Galindo Barrios, Mirleydis Judith

Garavito Hernandez, Maritza del Carmen

Garces Vasquez, Juana

Garcia Benitez, Jose de los Santos

Garcia de Arieta, Luz Elena

Garcia Santa, Miriam de Jesus

Garro Rodriguez, Marleny

Giraldo Marenco, Jesus Rafael

Gomez de Aguirre, Rosa Margarita

Gomez Duran, Dolly Amparo

Gomez Molina, Angela

Gonzalez Hernandez, Lisbania Angelica

Gonzalez Perez, Ana Isabel

Gopal, Serena, Esq.

Graciano Tuberquia, Maria Franquelina

Grandet Renal, Luz Marina

Guaca Murcia, Maruja

Gutierrez de Osorio, Lucelly

Hager, Eric, Esq.

Hart, Colin, Esq.

Hernandez Escobar, Maria Eloisa

Hernandez Velasquez, Lucelena

Hernandez, Diana Tirado

Higuita Goez, Francisco Luis

Higuita Torres, Maria Bracedes

Hinestroza Hurtado, Libia

Jaramillo Pulgarin, Alba Rosa

Jimenez Alvarez, Lubian Alonso

Julio, Maria Irene de la Rosa

Kistinger, Robert

Londono de Rengifo, Maria Rocio

Lopez Oviedo, Hercilia

Lopez, Barbara

Lopez, Gabriel George

Lopez, Maria

Lozano Rodriguez, Yamerlin

Machuca Blanquicett, Nurys

Machuca Pino, Rosa Mary

Marra, Kenneth A., The Honorable

Martinez Echevarria, Inez Janet

Martinez Mena, Benilda

Mestra Urango, Dina Luz

Minoya Mosquera, Ana Criselda

Molina Ruiz, Gloria Inez

Montoya Ramirez, Marina de Maria

Morelo Julio, Nilsa Eugenia

Moreno Charicha, Maria Silverio

Moreno Martinez, Maria de Jesus

Moreno Montoya, Lida

Moreno Rivas, Clara Veneranda

Moreno Rueda, Maria Dora

Moreno Torres, Maritza del Carmen

Mosquera Moreno, Edelmira

Mosquera Mosquera, Crecencia

Munoz Montoya, Luz Celi

Murillo Hidalgo, Ana Joselina

Murillo Murillo, Flor Alicia

Murphy, Melissa, Esq.

Ochoa Taborda, Aura

Olson, Robert

Ordman, John

Ortiz, Miriam de las Mercedes

Osorio Arias, Luz Dari

Paez Casarrubia, Eneida del Carmen

Panesso Prens, Orfelina

Perez Linan, Enelsy

Perez Padilla, Maria Encarnacion

Perez Uribe, Herminta

Perez Velez, Olga Libia

Polo Martinez, Nancy Edith

Porra Romana, Ana

Pozo Jimenez, Rosa Angelica

Quintero Hernandez, Luz Dari

Ramirez, Yomaira

Ramos Correa, Maria de la Cruz

Rangel Aguirre, Alcira Edith

Reinhart, Bruce E., The Honorable

Rengifo Mosquera, Jose Nilson

Renteria de Vasquez, Cruz Elena

Restrepo Rojas, Margarita de Jesus

Reyes Peres, Fanny

Rios Medrano, Oneida

Rivas Carvajal, Consuelo

Rivera Lopez, Dora Nelly

Rivera Villa, Tomas

Rojas, Nurisbel Maria

Romana, Maxima

Ruiz Mendoza, Zenith

Salas Blandon, Carmen Elisa

Salas Mayo, Merlin

Salcedo Naranjo, Everlides

Scherer, William, Esq.

Serna de Catano, Elvia Margarita

Silgado Becerra, Benigno

Soto, Maria de las Mercedes

Stewart, Thomas, Esq.

Suarez Giraldo, Ligia del Socorro

Tangarife de Gonzalez, Rosalba

Torres de Moreno, Josefa

Trujillo de Rojas, Maria Jovito

Tuberquia Graciano, Luz Elena

Tuberquia, Luz Elena

Usuga de David, Maria Jorgelina

Usuga Lopera, Mirta Lucia

Valenzuela, Olga Maria

Valoyes Manyoma, Rosa Alba

Vasquez Guerra, Miguel

Velasquez, Maria Eduvina

Waldo Cuesta, Maria Eugenia

Wolf, Paul, Esq.

Yepes Giraldo, Rosa Maria

Zuniga Berrio, Dalila Leonor

Zuniga Ibarguen, Rosa

I hereby certify that to the best of my knowledge, the above is a complete list of persons having an interest in this case.

/s/ Paul Wolf

_____

Paul Wolf, CO Bar 42107
*Attorney for Appellants*

December 14, 2024

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................  *i*

TABLE OF CONTENTS ......................................................................  *x*

TABLE OF CITATIONS ................................................................,..........  *xii*

ARGUMENT ..................................................................................  1

I.   The District Court erred in finding that C&S was entitled to attorneys' fees based on Wolf's failure to confer.  The Court should rule on the merits, rather than enforcing a default award of $225,000 dollars ..................................................................  1

    A.   Wolf didn't waive his other arguments by conceding that he didn't properly confer pursuant to District Court LR 7.3. .........  2

        1.   Wolf tried to confer pursuant to Local Rule 7.3, but Conrad & Scherer LLP refused, arguing that it was too late. ................................................................  4

    B.   Conrad & Scherer had no express agreements with Does 1-144, who can't be sold or traded to other lawyers.  .............................  7

    C.   There are no implied agreements between C&S and Does 1-144.   10

        1.   The District Court didn't create implied agreements between C&S and Does 1-144. ..........................................  10

        2.   The work done by C&S on two of the 144 cases could only have formed implied agreements with those two plaintiffs. ..........................................................  10

        3.   The Court reviews whether implied agreements were formed between C&S and Does 1-144 as a matter of law, de novo. ......................................................  12

    D.   Does 1-144 never understood that C&S was working on their behalf because only thirteen of them have ever

even communicated with Collingsworth or C&S. ....................... 14

II.    The District Court didn't review the time entries for reasonableness. .... 16

III.    The Court is already reviewing whether Conrad & Scherer LLP
        bribed the paramilitary witnesses who claimed to have killed all
        of the bellwether plaintiffs in the first trial. ............................................ 20

CONCLUSION ................................................................................................. 22

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION. 23

CERTIFICATE OF SERVICE .......................................................................... 23

# TABLE OF CITATIONS

## CASES

Am. Cas. Co. v. Etowah Bank, 288 F.3d 1282 (11th Cir. 2002) ....................... 12

Bazemore v. Jefferson Capital Sys., LLC, 827 F.3d 1325 (11th Cir. 2016) ..... 12

Bryant v. Carleson, 444 F.2d 353 (9th Cir. 1971) ........................................... 6

CSX Transp. Inc. v. City of Garden City, 235 F.3d 1325 (11th Cir. 2000) ...... 17

Drummond v. Collingsworth, Case No. 15-cv-506 (NDAL) ..................... 20-21

Estate of Bigelow v. Commissioner, 503 F.3d 955 (9th Cir. 2007) ................. 12

Estate of Thompson v. Commissioner, 382 F.3d 367 (3rd Cir. 2004) ............. 12

Fla. Power & Light Co. v. Mid-Valley, Inc.,
763 F.2d 1316 (11th Cir. 1985) ........................................................... 9

Freshman v. Atkins, 269 U.S. 121 (1925) ....................................................... 6

Godoy v. New River Pizza, Inc., 565 F. Supp. 2d 1345 (S.D. Fla. 2008) ...... 16

Greenfield Hills., Inc. v. Thompson, 44 So. 2d 679 (Fla. 1950) ................... 8

Gomez v. Chiquita Brands International, Inc., Case No. 24-13770 ............... 20

Kalimian v. Liberty Mutual Fire Insurance Company,
300 F.2d 547 (2d Cir. 1962) ............................................................... 6

Landy v. FDIC, 486 F.2d 139 (3rd Cir. 1973) ............................................... 5

Larson v. Citibank, 871 F.3d 1295 (11th Cir. 2017) ..................................... 13

Lowe v. McDonald, 221 F.2d 228 (9th Cir. 1955) ......................................... 6

Perez v. Wells Fargo, N.A., 774 F.3d 1329 (11th Cir. 2014) ....................... 1

Scott v. Kirtley, 152 So. 721 (Fla. 1933) ........................................................ 8

Shahar v. Bowers, 120 F.3d 211 (11th Cir. 1997) .......................................... 17

Surtain v. Hamlin Terrace Found., 789 F.3d 1239 (11th Cir. 2015) ........... 1

Trueform Inc. v. GMC, 80 F.App'x 968 (6th Cir. 2003) .............................. 12

Various Insurers v. General Electric International, Inc.,
No. 23-11211 (11th Cir. March 18, 2025) ...................................................... 9

Zahn v. Transamerica Corp., 162 F.2d 36 (3 Cir. 1947) ............................. 6

## RULES OF PROCEDURE

Local Rule 7.3 of the Southern District of Florida ........................... 1, 2, 4, 16

Fed. R. Evid. 201 and advisory comments .................................................. 5-6

Fed. R. Civ. P. 56 (a) .................................................................................... 13

## OTHER

Restatement (Second) of  Contracts (A.L.I. 1981) ...................................... 9

**ARGUMENT**

**I.    The District Court erred in finding that C&S was entitled to attorneys' fees based on Wolf's failure to confer.  The Court should rule on the merits, rather than enforcing a default award of $225,000 dollars.**

In the absence of any agreements with Does 1-144, or any communications with 90% of them, C&S has no equitable right to recover in <u>quantum meruit</u>.  To hold otherwise would set a precedent that conflicts with the ethics rules in Florida, and other jurisdictions in this Circuit.

C&S is asking for equitable relief, but really only has procedural arguments to make.  Wolf concedes that he didn't confer with C&S by reviewing their fees line by line as required by Florida Local Rule 7.3.[1]  However, the Eleventh Circuit has a "strong policy of determining cases on their merits … default judgments are generally disfavored." <u>Surtain v. Hamlin Terrace Found</u>., 789 F.3d 1239, 1244-45 (11th Cir. 2015) (citation omitted).  "The court may set aside an entry of default for good cause..." <u>Perez v. Wells Fargo, N.A</u>., 774 F.3d 1329, 1338 (11th Cir. 2014). Courts should not find that good cause exists if a defaulting party "demonstrates an intentional or willful disregard of the judicial proceedings." <u>Id</u>. at 1337 n.7. This did not occur here. Wolf concedes that his failure to read LR 7.3 was negligent, but he later tried to confer, and C&S refused, responding that it was too late.  <u>See</u> § I (A)(1) <u>infra</u>.

---

[1] Wolf did confer before the court-ordered mediation, by providing a list of specific objections to C&S' billing entries.  <u>See</u> § I (A)(1) <u>infra</u>.

1

**A.**    **Wolf didn't waive his other arguments by conceding that he didn't properly confer pursuant to District Court Local Rule 7.3.**

The first argument set forth by C&S is that Wolf failed to challenge Magistrate Judge's finding that Wolf failed to confer pursuant to Local Rule 7.3 of the District Court, thereby waiving this challenge to the R&R.  C&S Brief at 8-10.  Wolf concedes that he failed to follow Local Rule 7.3 by failing to confer, and didn't object to this finding in the R&R.  See Wolf's Objections to R&R, Supp.Appx. at 401-410.  However, Wolf has only waived the argument that he did or didn't confer.  The Court should still consider Wolf's other arguments, which were properly preserved for appeal in his objections to the R&R.

Wolf made ten pages of objections, which can be found at Supp.Appx. 401-411.  Wolf made the same arguments that he is making in this appeal: first, that C&S had no express or implied agreements or understandings with any of Does 1-144.  Id. at 402-407.  Second, that the "Magistrate Judge erred in his interpretation of the retainer agreements signed by Does 1-144. They do not provide a method for transferring power of representation to C&S. They do not - and could not, as a matter of law - allow Collingsworth to assign the representation of Does 1-144 to his new employer, C&S. They allow Wolf and Collingsworth to hire other lawyers to assist them, but no lawyer in the State of Florida can recover in quantum meruit for their services without the client's informed consent. Only two of Does 1-144 have even

2

met with C&S, and none signed any agreement. The Court never appointed C&S as lead counsel for their case." Id. at 407.  None of these issues were waived.

Third, Wolf did argue that the District Court never appointed C&S as "lead counsel" as C&S claim.  Supp.Appx. at 407.  "The Magistrate Judge appears to have had a misconception that C&S acted as 'lead counsel' for Does 1-144 for a twelve-year period, and should be compensated for their work. However, during that period of time, the "Non Wolf" counsel's briefs were written by either Earthrights International (usually by Marco Simons) or by Searcy Denney Scarola Barnhardt & Shipley. Those firms have at times acted as if they were lead counsel in the MDL. C&S has never pretended to be lead counsel in the MDL. The "Non Wolf" counsels' filings nearly always contained language that they didn't apply to the "Wolf Plaintiffs." Wolf had to make his own arguments in this Court, and in two appeals, in hundreds of filings.  Wolf shouldn't have to pay for the time spent by the Non Wolf counsel doing work that expressly didn't apply to their cases. C&S, who represent hundreds of other Plaintiffs, let Simons and Scarola make their arguments for them. Awarding C&S $225,000 would be a windfall to C&S, considering the relatively small amount of work they did that could arguably be said to have had a common benefit. It would be unjust enrichment of a law firm that only had a minor role in the litigation of the MDL." Id. at 402.  This is a general challenge to the nature

3

of the work the C&S claim to have done on Does 1-144's cases. The vast majority of the time entries have nothing to do with Does 1-144's cases.

Even if the Court finds that an issue was waived, the Court may still review it if necessary in the interests of justice. Conrad & Scherer cites 11th Circuit Local Rule 3-1, which states that the failure to timely object to the Magistrate's Report and Recommendations constitutes a waiver. C&S Brief at 9. However, C&S only quotes part of the local rule. It also says that "[i]n the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." It's not clear which other issue C&S is claiming was waived. Wolf concedes that he failed to confer, but preserved many other arguments for appeal. The argument that Wolf waived all of his other arguments by conceding that he failed to confer as required by LR 7.3 has no merit. If Wolf had failed to respond to the R&R at all, then he would have waived all of his other arguments. However, Wolf preserved the issues that are now on appeal.

### 1. Wolf tried to confer pursuant to Local Rule 7.3, but Conrad & Scherer LLP refused, arguing that it was too late.

Although Conrad & Scherer LLP have no right to any fees because of the lack of express or implied agreements with any of Does 1-144, Wolf did try to confer with Conrad & Scherer as required by LR 7.3, albeit too late. See Appellant's Notice of Attempt to Mediate Dispute, DE 30-1, and list of challenged entries, DE 30-2 at

7-15.  Conrad & Scherer's principal argument, that Wolf failed to confer, is a procedural argument because now Conrad & Scherer are the ones refusing to confer.

On February 27, 2025, the parties were unsuccessful in resolving the disputed attorneys fees through mediation.  <u>See</u> DE 30-1 and 30-2.  A few days before the mediation, on February 24, 2025, undersigned attorney Paul Wolf provided a detailed accounting of his objections to the fees in dispute by email to Eric Hager, counsel for Conrad & Scherer LLP.  DE 30-2.  Mr. Hager responded on February 26, 2025 that "[t]he time has long passed to review specific time entries. You refused to do so when required by the Local Rules. You've waived all challenges to any specific time entry. We look forward to tomorrow's mediation." <u>Id</u>. at 1.  The court-ordered mediation was held by video conference with mediator Beth Greenfield-Mandler on February 27, 2025.  The mediation is confidential, but did not result in any settlement.

Under Federal Rule of Evidence 201, Federal Courts of Appeal can take judicial notice of indisputable facts that directly relate to the issues on appeal.  Although appellate review is generally limited to a closed record, it "is subject to the right of an appellate court in a proper case to take judicial notice of new developments not considered by the lower court."  <u>Landy v. FDIC</u>, 486 F.2d 139, 151 (3rd Cir. 1973).  In <u>Bryant v. Carleson</u>, 444 F.2d 353 (9th Cir. 1971), the Ninth Circuit recognized this limited exception in taking judicial notice of developments

since the appeal, including filings, motions and orders in the district court and court of appeals, relevant administrative action of the Administrator of the United States Department of Health, Education and Welfare, and a decision of the California Supreme Court in a related matter.

"While the courts often decline to take judicial notice of other actions, they commonly take notice of the records of judicial proceedings of separate but related actions." Kalimian v. Liberty Mutual Fire Insurance Company, 300 F.2d 547 at n 1 (2d Cir. 1962), citing Freshman v. Atkins, 269 U.S. 121, 124 (1925); Zahn v. Transamerica Corp., 162 F.2d 36, 48 n. 20 (3 Cir. 1947); Lowe v. McDonald, 221 F.2d 228, 230 (9th Cir. 1955).

However, the Court may only take judicial notice of "adjudicative facts" that are not subject to reasonable dispute because they are "generally known within the territorial jurisdiction of the trial court" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a), (b), (d). A "high degree of indisputability is the essential prerequisite" to courts' taking judicial notice. Fed. R. Evid. 201 advisory comment n.

Here, Conrad & Scherer LLP cannot reasonably dispute that Paul Wolf provided a line by line accounting of his objections to Conrad & Scherer's claimed fees. DE 30-2. Or that Conrad & Scherer LLP's response was that it was too late to address this issue. Id. The new fact occurred in the same action, even though it

6

need only be in a related action.  The Notice was also filed in the District Court, see DE 3985, so that there is no issue that it's not part of the record of the case.

Conrad & Scherer objects to the notice.  See Doc. 33  They object that the notice seeks no relief, which is true.  Id. at 1.  Also that under CSX Transp. Inc. v. City of Garden City, 235 F.3d 1325, 1331 (11th Cir. 2000) and Shahar v. Bowers, 120 F.3d 211, 212 (11th Cir. 1997) the authority of the Court to supplement the record with information not reviewed by the district court is "rarely exercised."  Id. at 2-4.  Third, they argue that the Appellant may not supplement the record by adding to it after the appeal has already begun.  Id. at 5.  C&S made no arguments about judicial notice in their Answer Brief.  Doc. 31.

Wolf filed this as a notice rather than as a motion, and does not intend to file a reply to the response of C&S.  The mediation was ordered by this Court, and is relevant to the appeal.  It is relevant because C&S only real argument is that Wolf failed to confer, but later, Wolf tried to confer on the disputed fees, and it was C&S that would not confer.  This is one of the rare occasions where the court should supplement the record, because the mediation is a new development in this appeal that is not otherwise reflected in the record.

## B.  Conrad & Scherer had no express agreements with Does 1-144, who can't be sold or traded to other lawyers.

The agreements permitted Wolf and Collingsworth to retain other lawyers. Wolf and Collingsworth never agreed to retain C&S.  Collingsworth took at job as

a Senior Partner at C&S, and this was the reason Wolf wrote Collingsworth a Breach Letter.   Appx. at 1020.   There is no agreement that would have allowed Collingsworth to make this decision unilaterally, and take the representation of Does 1-144 with him to his new employer.

C&S argue that the district court found that "after Mr. Collingsworth joined C&S in early 2008, there was a binding legal agreement between the client and C&S to provide legal services as authorized by Mr. Collingsworth."  C&S Brief at 11, citing Appx. at 1039.  This legal conclusion is erroneous and should be reviewed <u>de novo</u>.  This Court can review the retainer agreement, which can be found in English at Appx. 865, and interpret the contract language <u>de novo</u>.  <u>See</u> § I (C)(3) <u>infra</u>.

C&S argue that written agreements between attorneys and clients are not needed in order to recover in <u>quantum meruit</u>, and dispute whether the clients in <u>Scott v. Kirtley</u>, 152 So. 721 (Fla. 1933) and <u>Greenfield Hills., Inc. v. Thompson</u>, 44 So. 2d 679 (Fla. 1950) had written agreements with their attorneys.  C&S Brief at 13.  If these cases don't state that explicitly, they do at least state that the attorneys and clients had pre-existing contracts that required the client to pay "reasonable" attorneys fees in an unspecified amount.  The courts then found implied agreements to pay the amounts determined by the courts to be reasonable.  This Court should not hold that written agreements between attorneys and clients are not needed in order to recover for fees in <u>quantum meruit</u>.

8

C&S argue that they were an intended third party beneficiary to the retainer agrements between Wolf and Does 1-144. C&S Brief at 11. They cite Fla. Power & Light Co. v. Mid-Valley, Inc., 763 F.2d 1316, 1321 (11th Cir. 1985) as authority. In that case, "Mid-Valley and FPL intended the bulk of the actual work to be done by employees of Brown & Root and knew that it was being done by those employees." Id. Here, neither Wolf nor any of Does 1-144 had ever even heard of C&S at the time the contracts were signed. Wolf Declaration at ¶ 4, Appx. at 1024. There is more recent case law on this issue. In Various Insurers v. General Electric International, Inc., No. 23-11211 (11th Cir. March 18, 2025), the operator of a power plant entered into an agreement that had an arbitration clause. The Court held that the owner of the plant, a different entity, was a third party beneficiary of the agreement, and was required to arbitrate as well. "No one suggests that SKH was an intended beneficiary under § 302(1)(a) of the Restatement. The dispute centers squarely on § 302(1)(b) - whether 'the circumstances indicate that' the parties to the Services Contract intended to give SKH 'the benefit of the promised performance.'" Id. at *7. The Court was quoting the Restatement (Second) of Contracts § 302 (A.L.I. 1981). Here, the parties didn't intend anything with respect to C&S, which is why they aren't named in the contracts. C&S is asking this Court to hold that unidentified third parties who were unknown at the time of contract formation can

9

be intended beneficiaries, when they later appear and do work in performance of the contract.

### C.    There are no implied agreements between C&S and Does 1-144.

#### 1.    The District Court didn't create implied agreements between C&S and Does 1-144.

C&S argue that when the District Court approved the stipulation between Wolf and Collingsworth that Collingsworth would be lead counsel, and later ordered C&S to continue representing all of their clients, which they say included Does 1-144, these court orders created implied attorney-client contracts between C&S and Does 1-144.  C&S Brief at 13.  If this is what the District Court intended to do, it was without power to do so absent the agreement of Does 1-144 or their attorney, undersigned counsel.  C&S claim that these orders are reviewed by this Court for clear error, id., but whether implied agreements were created as a matter of law is a legal issue reviewed de novo.  See § I (C) (3) infra.

#### 2.    The work done by C&S on two of the 144 cases could only have formed implied agreements with those two plaintiffs.

Conrad & Scherer also argue that implied agreements were formed when C&S performed legal services for Does 1-144 with their knowledge, including "initial disclosures, other written discovery and depositions."  C&S Brief at 13.  This is true

only with respect to the two cases that C&S actually worked on.[2]  Wolf already agreed to pay C&S $18,539 in fees and $4,755.22 in costs for work done defending the depositions of two bellwether plaintiffs.  <u>See</u> Wolf Plaintiffs' Opposition to Conrad & Scherer LLP's Motion to Enforce Charging Lien.  Supp. Appx. at 364-365.

C&S claim that it is a "blatant misrepresentation" to say that they never communicated with Does 1-144, <u>id</u>. at 16, but their billing records only reflect work done defending two depositions, and communications with thirteen other plaintiffs[3] who are among Does 1-144; <u>see</u> § I (D) <u>infra</u>.  The billing records also refer to work done on the cases of other fourteen other plaintiffs of C&S who are not among Does 1-144.  <u>See</u> § II <u>infra</u>  The majority of the time entries claimed by C&S do not refer to any plaintiff, and reflect work done generally on the MDL.  <u>See</u> § II <u>infra</u>.

C&S misquote Wolf's argument that there is no law in this Circuit finding implied agreements where no written agreement of any sort existed.  C&S Brief at 12.  Wolf made this argument only in reference to attorney-client agrements.

---

[2] C&S cite time entries 247, 251-252, 268-270, 272, 457-458,  463-464, 468, 469, 286, 302, 310, 319, 322, 340, 341, 347, 357, 426, 430, 435, 439, and 445.  These 27 time entries represents less than 5% of the 610 time entries claimed.

[3] C&S cites to their Supp.App.395 as "identifying numerous Does 1-144 by name associated with specific time entries."  <u>Id</u>. at 16.  C&S doesn't attempt to count the "numerous" plaintiffs, let alone name them.  A review of this filing identies thirteen of the 144 plaintiffs that C&S claims to have contacted.  <u>See</u> § II <u>infra</u>.

Counsel is familiar with the concepts of reliance and promissory estoppel, and contracts implied by law. These concepts have never been applied to attorney-client agreements, though. Does 1-144 must been aware of the agreements and must have agreed to them, in writing. There must be a "meeting of the minds" in order to form an attorney-client relationship. C&S has only contacted thirteen of Does 1-144, and has never obtained written agreements with any of Does 1-144.

> **3.    The Court reviews whether implied agreements were formed between C&S and Does 1-144 as a matter of law, <u>de novo</u>.**

C&S agree that contract interpretation is a question of law reviewed <u>de novo</u>. C&S Brief at 6, citing <u>Am. Cas. Co. v.Etowah Bank</u>, 288 F.3d 1282, 1285 (11th Cir. 2002). However, they argue that "[t]he existence of an implied agreement is a question of fact reviewed for clear error." C&S Brief at 6, citing three out-of-circuit cases: <u>Estate of Bigelow v. Commissioner</u>, 503 F.3d 955, 964 (9th Cir. 2007); <u>Estate of Thompson v. Commissioner</u>, 382 F.3d 367, 376 (3rd Cir. 2004); and <u>Trueform Inc. v. GMC</u>, 80 F.App'x 968, 974 (6th Cir. 2003)

In the 11th Circuit, whether the parties entered into an implied agreement is decided as a matter of law. <u>Bazemore v. Jefferson Capital Sys., LLC</u>, 827 F.3d 1325, 1333 (11th Cir. 2016) ("We agree with our sister circuits that a summary judgment-like standard is appropriate and hold that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an

12

agreement. Fed. R. Civ. P. 56(a)."); <u>Larson v. Citibank</u>, 871 F.3d 1295 (11th Cir. 2017). In <u>Larson</u>, the Court reviewed <u>de novo</u> the question whether an arbitration clause in the fine print of a contract of adhesion was enforceable, and found for various reasons that it was. Contract formation is a legal issue subject to <u>de novo</u> review, unless there are facts in dispute.

The fact that C&S communicated with thirteen of Does 1-144 is not in dispute. C&S can't dispute that they have never communicated with 90% of Does 1-144, which is what their billing records show. Wolf and C&S are disputing the legal issue of whether or not implied contracts were formed with these thirteen plaintiffs, or with all 144, as a matter of law. This is reviewed <u>de novo</u>. 827 F.3d at 1333. Some type of communication between C&S and Does 1-144 must have occurred in order for a contract to be formed. Reliance and promissary estoppel do not apply if C&S have never even communicated with the clients.

There is also the legal issue of the interpretation of a provision in the agreements between Does 1-144 and Wolf that says "Client agrees that the Attorneys have exclusive authority to retain additional attorneys to work with the Client to process the claims listed in paragraph number two, and the client has exclusive authority to terminate any prior retained attorney. Any other agreement with any other attorney or attorneys retained is between the Attorneys and those attorneys." Appx. at 865 at ¶ 3. This Court should decide <u>de novo</u> whether this provision gave

13

Collingsworth the right to assign the power of representation to his new employer, C&S, after taking a job as a Senior Partner in the firm, or whether Collingsworth's employment at C&S would be an "other agreement with any other attorney or attorneys retained" that would be solely "between the Attorneys and those attorneys." Id. This provision also says that the new attorneys would be "retained," meaning hired, or under the supervision of "the Attorneys." All of these contract formation and interpretation issues are reviewed de novo.

C&S argue that the "clear intent" of the district court, as interpreted by the Magistrate Judge, was to appoint C&S as a firm, not just Collingsworth as an individual. C&S Brief at 2. If that's what the district court's intent was, it was without power to assign the representation of a party from one lawyer to another, absent the client's consent. Although the Magistrate Judge may have had to determine the District Court's intent, this Court may determine the issue de novo.

### D. Does 1-144 never understood that C&S was working on their behalf because only thirteen of them have ever even communicated with Collingsworth or C&S.

C&S argue that "Does 1-144 understood that C&S was working on their behalf." C&S Brief at 16. This can't be true if C&S isn't mentioned in the retainer agreements and has never communicated with the plaintiffs, as is true for 90% of them. C&S and their agents have only met with 2 of Does 1-144 in person: Gladys

Munoz Correa and Rosa Mary Machuca. Appx. at 1024. Wolf has met with all of Does 1-144 in person. Id.

C&S do not identify the plaintiffs among Does 1-144 who are mentioned in their billing records. According to Wolf's review of those records, C&S has only communicated with thirteen of Does 1-144: Gladys Munoz Correa, Rosa Mary Machuca, Liliana Bravo Silgado, Flor Alicia Murillo, Sixta Bejarano, Consuelo Rivas, Clara Bernarda M. Rivas, Maria Rocio Londono de Rengifo, Rosa Zuniga Ibarguen, Lucelly Gutierrez de Osorio, Maria Rolsalva Betancur, Lida Moreno Montoya and Yamerlin Lozano.[4] Appx. 882-960. If C&S ever communicated with the other 131 plaintiffs among Does 1-144, this is not reflected in their billing records. This means that Collingsworth and C&S have only communicated with about 10% of the plaintiffs among Does 1-144.

---

[4] The Court may also consider whether the act of communicating with a plaintiff constitutes substantive work on their case, and whether this would be compensable in quantum meruit, separately from work that was done generally on the MDL. The argument is made here in another context: whether C&S had an "understanding" with a plaintiff that they could be compensated for their work turns on whether they have ever communicated.

**II.    The District Court didn't review the time entries for reasonableness.[5]**

Even where a party has failed to comply with Local Rule 7.3, the Court must independently assess the reasonableness of any claim for fees. <u>Godoy v. New River Pizza</u>, Inc., 565 F. Supp. 2d 1345, 1347 (S.D. Fla. 2008).   The Court shouldn't award fees to Conrad & Scherer for work done on cases of other plaintiffs represented by C&S, who are not among Does 1-144.  Neither should the Court award fees for work that was adversarial to Wolf, and only related to fighting over control of the case.

Instead, the District Court relied on a supposed "attorneys fees expert" with no personal knowledge of how the work done related to the cases of Does 1-144. C&S wants to be paid for time spent defending a motion to disqualify them from representing Does 1-144, even though the District Court ruled in Wolf's favor and disqualified C&S.  Similarly, C&S wants to be paid for time spent on an earlier dispute over who would be lead counsel, which was resolved by a stipulation.  Wolf already agreed to pay C&S $18,539 in fees and $4,755.22 in costs for work done

---

[5] Although the Magistrate Judge said he reviewed the time entries for reasonableness, he didn't have enough information to do so, and didn't provide any details as to how he determined that the 610 time entries had any relation to Does 1-144's cases.  He appears to have found that any work done on the MDL with respect to any plaintiff - whether among Does 1-144 or not - can be billed to Wolf via the cases of Does 1-144.  He didn't check the names of Does 1-144 against the names of the plaintiffs mentioned in C&S' Expert Report.  He didn't remark on the fact that some of the document titles clearly reflect that was adversarial to Wolf, such as defending against Wolf's Motion to Disqualify C&S from representing Does 1-144. The motion was granted. Wolf shouldn't have to pay for C&S' time working on this.

defending the depositions of two bellwether plaintiffs.   See Wolf Plaintiffs' Opposition to Conrad & Scherer LLP's Motion to Enforce Charging Lien, at 9-10. DE 3885.  Supp. Appx. at 364-365. This is only about 10% of the total claimed.[6]

Exhibit 1 to Wolf's Notice of Attempt to Mediate Attorneys' Fees Dispute with Conrad & Scherer LLP,[7] Doc. 30-2,[8] provides a line by line accounting of Wolf's specific objections to the claimed fees.  Wolf recognizes that work done on depositions or initial disclosures of any of Does 1-144 would be relevant, see C&S Answer Brief, Doc. 31 at 4-5, but twenty of the claimed entries refer to individuals who are not among Does 1-144.  Doc. 30-2 at 7-9.  Fourteen entries pertain to dispute between Wolf and Conrad & Scherer, LLP, over who would be lead counsel, and reflect work done that was only adversarial to Wolf.  Id. at 9.   Fifty-five entries

---

[6] C&S cite time entries 247, 251, 251, 269, 269, 270, 272 (Appx. 913-916); 457, 458, 463, 464, 468, 469 (Appx. 941-942); 286, 302, 310, 319, 322, 340, 341, 347, 357, 426, 430, 435, 439 and 445 (Appx. 918-939) as relating to discovery in bellwether cases.  C&S Brief at 14, 5.  This is a total of 27 out of 610 of the time entries claimed, which is less than 5%.

[7] Conrad & Scherer objects to the notice. See Doc. 33  They object that the Notice seeks no relief, which is true.  Id. at 1.  Also that under CSX Transp. Inc. v. City of Garden City, 235 F.3d 1325, 1331 (11th Cir. 2000) and Shahar v. Bowers, 120 F.3d 211, 212 (11th Cir. 1997) the authority of the Court to supplement the record with information not reviewed by the district court is rarely exercised.  Id. at 2-4.  Third, they argue that the Appellant may not supplement the record by adding to it after the appeal has already begun.  Id. at 5.  Wolf filed this as a notice rather than as a motion, and does not intend to file a reply to the response of C&S.  C&S made no arguments about judicial notice in their Answer Brief.  Doc. 31.

[8] In this brief, the abbreviation "Doc." refers to docket entries in this appeal.  The abbreviation "DE" refers to docket entries in the District Court.

pertain to Wolf's motion to disqualify Conrad & Scherer, which was clearly adversarial. Id. at 9-12. Sixteen entries pertain to work done to try to sever the claims of plaintiffs killed by the FARC from the bellwether pool, which was one of the reasons Wolf filed the motion to disqualify C&S. Id. at 12. Forty-six entries pertain to adding new plaintiffs, designated as "Perez" plaintiffs because their names were filed under seal. Id. at 12-15. Amending a complaint to add the names of other plaintiffs didn't benefit Does 1-144 in any way. If C&S made other changes to the complaint, they were not significant and didn't form the basis of any District Court ruling.

C&S billing records list communications[9] with other fourteen individuals who appear to be plaintiffs in the MDL, but are not among Does 1-144. These include Lina Maria Berdugo, Elizabeth Gissell Carbal Diaz, Patricia Hernandez, Efrain Hidalgo, Lina Maria Lechuga, Daniel Martinez, Manuel Alberto Martinez Herrera, Marta Rosa Olivares Selgado, Paul Paguaga, Iluminada Pitalua, Clorinda Rodriguez, Mr. Rodriguez Herrera, Nuris Isabel Sanchez Ferreira and Mariela Isabel Sierra Soto. Appx. 882-960. This is just slightly more than the thirteen plaintiffs among Does 1-144 with whom C&S actually communicated. It shows that the majority of

---

[9] Several other C&S time entries refer to a "review of file" of other plaintiffs among Does 1-144, but do not reflect any communication. Counsel did not count them, and they are not included because they do not reflect any communication.

the work done on specific cases, which were billed to Wolf, were in relation to C&S' other cases.

The remainder of C&S time entries refer to no plaintiff by name, and appear to reflect the work that C&S did on the MDL generally.  C&S argue that in late 2015, the district court charged [C&S] with the obligation to continue represention of the entire plaintiff pool, including the Doe Plaintiffs.  C&S Brief at 2, citing Supp.Appx. at 3. C&S has about 795 other plaintiffs in the MDL. See Third Amended Complaint, DE 162 in Does 1-144 docket.  It would not be fair to make Wolf pay for work that was primarily done for the purpose of ligitating C&S' other cases.  C&S argue that "all of the time entries in C&S's fee request related to Does 1-144."  C&S Brief at 19, citing Appx. 882-960, which refers to all 610 time entries.  However, most do not relate directly Does 1-144's cases, and relate to general work done to advance C&S other cases in the MDL.

C&S argue that "[on] the time entries, the district court recognized that '[a]lmost all of the work expended, as reflected in C&S's billing records, appears to have been reasonable and necessary to representing the Doe Plaintiffs.'"  C&S Brief at 17, quoting Report and Recommendations at 16, Appx. 1043.  This is because the Magistrate Judge was unfamiliar with the work, which primarily related to cases other than those of Does 1-144.  Wolf should not have to pay for the time spent by C&S working on other cases.

19

**III.    The Court is already reviewing whether Conrad & Scherer bribed the paramilitary witnesses who claimed to have killed all of the bellwether plaintiffs in the first trial.**

Just as the Court can take judicial notice of Wolf's attempt to confer on specific time entries on February 24, 2025, see § I (A)(1) supra, the Court may also take judicial notice of the bribery in this case that is one of the bases for Chiquita's appeal in this litigation, see Case No. 24-13770, and also shown in the related litigation in Drummond v. Collingsworth, Case No. 15-cv-506 (NDAL). The Court need not reach this issue if it rules in Wolf's favor as a matter of law, that attorney-client retainer agreements are needed to recover in quantum meruit. However, before awarding fees to Conrad & Scherer in equity, the Court should consider the defense of unclean hands. This means that the Court should first decide whether Chiquita has made a sufficient showing of witness bribery in Case No. 24-13770 to invalidate the first bellwether trial. See Appellants' Brief, DE 36 in Gomez v. Chiquita Brands International, Inc., Case No. 24-13770, at 48-53. ("The District Court Precluded Significant Witness Tampering Evidence, but Admitted Tainted Evidence and Unsworn Testimony").[10] If the Court makes such a finding, then this

---

[10] Chiquita cites to voluminous evidence of witness bribery in its Appendix in that appeal. Id. In the instant appeal, the relevant evidence can be found at Appx. 2346-9, 3617, 3617-4, 3617-6, 3617-14, 3885-1, 3885-2, 3885-3 and 3941-1. In addition, the Northern District of Alabama recently granted Drummond's Renewed Motion for Spoliation Sanctions against Collingsworth and Conrad & Scherer, LLP, due to the disappearance of about six laptop computers, an external hard drive and an ipad that contained the only copies of Collingsworth's emails from the time period of the

should bar any recovery in this case, since Conrad & Scherer have no legal arguments, and only seek to recover in <u>quantum meruit</u>, which is an equitable remedy. The Court should only decide the bribery issue one time, and this is best done in Appeal No. 24-13770.

    C&S argue that "Wolf has made no showing that his (unproven) allegations of misconduct injured him in any way. There is no evidence that he received less in attorneys' fees from the settlement because of C&S's alleged conduct." C&S Brief at 20. C&S mis-state the burden of proof on this issue. Wolf doesn't have to prove any additional injury to assert this defense to prevent the unjust enrichment of C&S. Wolf merely has to show that C&S isn't entitled to the equitable relief they seek because of their conduct in this case. The Court may not not ever need to reach this issue, unless it finds that C&S are entitled to fees.

---

bribery in both the <u>Drummond</u> and <u>Chiquita</u> cases. The jury in <u>Drummond</u> will be instructed that they  may draw an adverse inference from the loss of this evidence. <u>See</u> DE 377 in <u>Drummond v. Collingsworth</u>, Case No. 15-cv-506 in the Northern District of Alabama.

## CONCLUSION

For the foregoing reasons, the Court should find that C&S are not entitled to recover attorney fees in <u>quantum meruit</u>, and REVERSE the Order below.  In the alternative, the Court should order the parties to confer on the details of the fees, and REMAND the dispute to the District Court for further proceedings.

Respectfully submitted,

/s/ Paul Wolf

_____

Paul Wolf
*Appellant*
*Attorney for Does 1-144*

July 7, 2025

**Certificate of Compliance with Type-Volume Limitation**

I hereby certify that:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5684 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 11th Cir. R. 32-4, and

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because it has been prepared using Microsoft Word in Times New Roman, 14-point font.

/s/ Paul Wolf

_____

Paul Wolf

**Certificate of Service**

I hereby certify that on this 7th day of July, 2025, I served copies of this brief by US Priority Mail, to

Clerk of the Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth Street, N.W.
Atlanta, GA 30303

I further certify that on the same day, I served an electronic copy of the same brief to counsel for the Appellees at the following email addresses:

Eric Hager - ehager@conradscherer.com

William R. Scherer - wscherer@conradscherer.com

/s/ Paul Wolf

_____

Paul Wolf